UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MOTIVA PERFORMANCE  
ENGINEERING, LLC,

    Debtor.

PHILIP MONTOYA, Chapter 7 Trustee,

    Plaintiff,

v.

WILLIAM S. FERGUSON, DEALERBANK  
FINANCIAL SERVICES, LTD.,  
ARMAGEDDON HIGH PERFORMANCE  
SOLUTIONS, LLC., ARMAGEDDON TOOL  
& DIE, LTD., AVATAR RECOVERIES, LLC., and  
DAVID ROCHAU,

    Defendants.

Case No. 19-12539-t7

Adv. Pro. No. 21-1026-t

## OPINION

Before the Court is plaintiff's motion for partial summary judgment that $40,000 allegedly held by defendant William Ferguson be turned over to the estate. Ferguson responded that he has already done so. The matter has been fully briefed. For the reasons set out below, the Court finds that there are fact issues about whether Ferguson paid the debt, so the motion must be denied.

A.    <u>Facts</u>.[1]

---

[1] The Court takes judicial notice of its docket and of relevant public records, including the New Mexico Supreme Court's disciplinary opinion in *In re William S. Ferguson, Esquire*, No. S-1-SC-38741 (NMSC June 10, 2021), *Creig Butler v. Motiva Performance Engineering, LLC, et al.*, Case No. D-202-CV-2017-01393, pending in the Second Judicial District of New Mexico, and the related appeal, New Mexico Court of Appeals case No. A-1-CA-38587. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

The following material facts are not in genuine dispute:

William Ferguson is a well-known local attorney, the owner of Will Ferguson and Associates ("WFA"), and a car aficionado.[2] Together with partners David Rochau and Scott Fox, Ferguson owned and operated Motiva Performance Engineering, LLC, a "speed shop" that provided customers with high-level performance modifications. Motiva also had a car dealer license and, for a time, a showroom from which it sold cars on consignment, including some of Ferguson's cars. Ferguson is also the owner or part-owner of several other businesses, including Dealerbank Financial Services, Ltd, a "floor plan" lender that does auto financing and leasing, and Armageddon High Performance Solutions, which sells turbocharger kits.

In December 2014 Ferguson bought a 2012 Ferrari FF from a Texas dealer. Ferguson paid $200,000 for the car, drawn from a personal line of credit at Main Bank. Although Ferguson considered the Ferrari his, he titled it in Motiva's name.[3]

In 2016, the Ferrari was hit and damaged in WFA's parking lot. Motiva, represented by WFA, sued the person who hit the Ferrari. In 2017, Motiva and the driver's insurance carrier settled the lawsuit, pursuant to which the insurer issued a check to Motiva and WFA for $40,948.49. Ferguson deposited the check in his personal bank account at Main Bank.

Creig Butler hired Motiva to upgrade a 2009 Hummer H3TX. The work did not go well. Butler sued Motiva on February 28, 2017, in the Second Judicial District, State of New Mexico, No. D-202-CV-2017-01393 (the "State Court Action"). In his complaint, Butler alleged that

---

[2]Ferguson has 70-75 automobiles in his collection, a seat on the board of a national classic car auction company, an active car restoration business, and a car leasing company, among other things.
[3] Car dealers can transfer cars without paying excise tax. The New Mexico excise tax on used cars is 3%, so Ferguson avoided paying $6,000 in excise taxes by titling the Ferrari in Motiva's name.

Motiva agreed to upgrade the Hummer for $20,000. When, two years and $70,000 later, Motiva returned the Hummer to Butler, it was not drivable.

On October 26, 2018, after a four-day jury trial in the State Court Action, the jury returned a verdict against Motiva for $292,001 plus costs, attorney fees, and post-judgment interest. The judgment was increased on April 3, 2019, to $337,317.90, apparently to add the attorney fees and costs.

In October 2018, shortly after the jury verdict, Ferguson caused Motiva to transfer the Ferrari's title to Dealerbank. On November 26, 2018, the state court issued a writ of execution directing the Bernalillo County sheriff to seize Motiva's assets to satisfy Butler's judgment. The sheriff served the writ and attempted to seize Motiva's inventory of 40-50 boxed turbo kits. The execution was interrupted by Ferguson, who asserted that Motiva's landlord, Avatar Recoveries, LLC, had a landlord's lien on Motiva's assets. Ferguson owns Avatar Recoveries.

The foiled execution led Butler to file an application for a writ of attachment or preliminary injunction freezing Motiva's assets, including the Ferrari. The state court orally granted the application on April 18, 2019. For the next two weeks Ferguson and Butler's counsel negotiated a form of injunction order. On May 7, 2019, the state court entered a Preliminary Injunction and Order on Application for Writ of Attachment. On June 28, 2019, the state court issued an order adding Armageddon, Ferguson, and Dealerbank as "relief defendants" in the State Court Action.

In early October 2019 the state court held an evidentiary hearing on who owned the Ferrari, the insurance settlement, the turbo kits, and other assets. The result was the Court Findings of Fact and Conclusions of Law, entered October 28, 2019 (the "Post-Judgment Order"). In the Post-Judgment Order the state court found, inter alia:

> The Settlement Funds involving the Allstate case ($40,948.49) involving loss of use of the vehicle belonged to the legal owner of the Ferrari, i.e., Motiva, and are therefore subject to execution.

The court ordered, inter alia:

> Ferguson and/or his firm shall surrender any such Settlement Funds not already used to repair the Ferrari, or not otherwise disbursed to Motiva, to the Sheriff (to pay the present judgment) or Plaintiff by means of execution or garnishment, as appropriate . . . . if Ferguson did not disburse the Settlement Funds to Motiva, then Ferguson and his firm shall pay $40,948.49 . . . over to Plaintiff in partial satisfaction of the judgment by means of execution or garnishment

(the "Settlement Debt"). For the limited purpose of ruling on the partial summary judgment motion, Ferguson does not dispute that the Post-Judgment Order is binding.[4]

On November 1, 2019, WFA wired a $10,000 retainer to Walker & Associates, PC (attorney Chris Pierce). Motiva, represented by Walker & Associates, filed this case at 4:45 p.m. that day. The filing automatically stayed the State Court Action.[5] In their attorney disclosure statement, Walker & Associates stated:

> Pre-petition, Attorney received a retainer of $10,000.00 from Will Ferguson & Associates, P.C. as additional loaned funds to the Debtor, from which Attorney was paid $5,217.54 for pre-petition services, costs, and taxes, including the $1,717.00 filing fee. All subsequent payments to Attorney shall be from the remainder of the retainer, from the estate or possibly from William S. Ferguson or Will Ferguson & Associates, P.C., if approved by the Court.

---

[4] On November 1, 2019, Ferguson filed motion to reconsider the Post-Judgment Order in the State Court Action. On November 25, 2019, with no action having been taken on the motion for reconsideration, Ferguson appealed the Post-Judgment Order. The Court of Appeals concluded that the notice of appeal violated the automatic stay and was void. On April 14, 2021, the Court entered a stipulated order lifting automatic stay to allow the appeal to proceed. The Court of Appeals ruled that the order triggered a 30-day deadline for Ferguson to file a valid notice of appeal, as the initial notice was void. Ferguson did not file a new notice by the deadline. The Court of Appeals thereupon dismissed the appeal. The New Mexico Supreme Court denied Ferguson's petition for a writ of certiorari. The Court of Appeals then remanded the case to the district court for further proceedings.

[5] 11 U.S.C. § 362(a)(1); *City of Chicago, Il. v. Fulton*, 141 S. Ct. 585, 589 (2021) (immediate, automatic consequence of filing a bankruptcy petition is the automatic stay).

In February or March 2020, Ferguson deposited $950 from his personal bank account into a newly established debtor-in-possession account for Motiva (the "DIP account"). In March 2020 Ferguson caused WFA to deposit $30,000 into the DIP account.

At some point after Motiva filed this case (the date is not clear), Ferguson drafted and signed, personally and on behalf of Motiva, a document entitled "Promissory Note." The note was backdated to October 21, 2019. The note, with Ferguson as the lender and Motiva as the borrower, provides:

> 1. Ferguson has been adjudged by an order of competent jurisdiction to owe Motiva the sum of $41,000.00 as a result of a 2017 insurance payment for vehicle damage. That judgment is, or will be, under appeal and is in active dispute.
> 2. Ferguson shall loan to Motiva the sum of $41,000, equal to the amount in dispute, which sum shall constitute the payment in full of any obligation owed, if the judgment is affirmed on appeal or otherwise resolved as being actually owed to Motiva. In that event, this loan shall be considered paid in full.
> 3. As currently Motiva has no bank account, the funds shall be administered by Ferguson's law firm, until an account be established. Fergusons' law firm will distribute the funds for Motiva's benefit as directed.
>
> . . . .

Ferguson avers that he prepared the note "to record the payment in writing, in a way which would document the potential contingent nature of the payments . . . as a loan in the event [the state court's] decision was reversed."

Shortly after the case was filed, Motiva sent a demand letter to Ferguson, demanding payment of the Settlement Debt.

On April 15, 2020, the Court entered a stipulated order converting the case to chapter 7. Phillip Montoya (the "Trustee") was appointed chapter 7 trustee.

The Trustee filed this adversary proceeding on September 2, 2021. In the partial summary judgment motion, which pertains only to the Settlement Debt, the Trustee seeks a judgment

requiring Ferguson pay the debt, less $950, to the chapter 7 estate. Ferguson responded that he has already paid it, via WFA's $10,000 and the $30,000 payments.

B.    Summary Judgment Standards.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" thereby entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute is genuine when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' and a fact is material when it 'might affect the outcome of the suit under the governing substantive law.'" *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). In ruling on a motion for summary judgment, the Court is required to "view the facts and draw reasonable inferences in the light most favorable to the party opposing the . . . motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

C.    The Trustee's Turnover Claim for the Settlement Debt.

The Trustee alleges that "Ferguson remains in possession of $39,998.49 . . . that is property of Motiva under 11 U.S.C. § 541." The allegation is somewhat wide of the mark. When Ferguson deposited the settlement check in his bank account in 2017, he became a creditor of the depository bank for the deposited amount. *See, e.g., Walker v. Paramount Engineering Co.*, 353 F.2d 445, 448 (6th Cir. 1965) (a bank deposit "is no more than a debtor-creditor relationship . . . ."); *Eggert v. Weisz*, 839 F.2d 1261, 1263 (7th Cir. 1988) (in dicta, the court stated that a bank deposit created a debtor creditor relationship); *Jeffrey J. Glasser MSD, P.A. v. Compass Bank, N.A.*, 2010 WL 11553080, at *5 (E.D. Tex.) (a bank deposit ordinarily creates a debtor/creditor relationship); *Capitol Indem. Corp. v. Wright*, 341 F. Supp. 2d 1152, 1159 n.2 (D. Nev. 2004) (same, quoting *Allstate Ins. Co. v. Russo*, 829 F. Supp. 24, 27 (Bankr. D.R.I. 1993). After the deposit, Ferguson

had no estate property. The state court used similar language when it ordered Ferguson to "surrender" the "Settlement Funds," as though it was cash locked in Ferguson's safe deposit box.

Nevertheless, the state court's and the Trustee's meaning is clear. A more accurate allegation (leaving to one side the issue of payment) would be that Ferguson owes the Settlement Debt to Motiva and § 542(b)[6] allows the Trustee to collect the debt.[7]

D.     Fact Issues Preclude Entry of Judgment on Turnover of the Settlement Debt.

1.     Were the $10,000 and $30,000 payments on account of the Settlement Debt? There is a genuine fact issue whether the $10,000 and $30,000 payments were on account of the Settlement Debt. The Trustee contends that, because of the terms of the promissory note and the fact that the payments were made by WFA, the Court must conclude that the payments were not on account of the Settlement Debt. The Trustee's argument is supported by the language in Walker & Associates' Rule 2014(a) disclosure that the $10,000 retainer was a loan from WFA. Furthermore, Motiva's November 14, 2019, demand letter to Ferguson to turn over the entire Settlement Debt suggests that Motiva did not consider the $10,000 retainer a partial payment of the debt. Finally, the bankruptcy schedules show the entire Settlement Debt due and owing, again indicating that the $10,000 retainer was not a partial payment of the debt.

---

[6] § 542(b) requires "an entity that owes a debt that is property of the estate and that is matured" to "pay such debt to, or on the order of, the trustee[.]" The debt was "matured" on the petition date. *See, e.g., In re Connelly*, 476 B.R. 223, 230 (Bankr. E.D. Va. 2012) ("'Matured' refers to 'debts that are presently payable, as opposed to those that are contingent and become payable only upon the occurrence of a certain act or event.'").

[7] The Trustee acknowledges that Ferguson paid $950 toward the Settlement Debt. Whether the balance of the debt has been paid is the focus of the dispute.

Ferguson counters that the $10,000 and $30,000 payments were made by WFA for him, fully discharging the Settlement Debt.[8] There is factual support for this position. First, the $40,000 WFA paid, together with the $950 Ferguson paid, add up to the Settlement Debt (with $.51 extra). This seems unlikely to be a coincidence. Second, WFA had no reason to loan Motiva $40,000 and must have known that the chance of repayment was very low. Third, neither WFA nor Motiva sought court approval for the loan, as required by § 364(b). Thus, any loan payments would be avoidable by the Trustee. *See* § 549(a)(2)(B) ("the trustee may avoid a transfer of property of the estate. . . that is not authorized under this title or by the court."); *In re Lodge America, Inc.*, 239 B.R. 580, 585 (Bankr. D. Kan. 1999), affirmed, 259 B.R. 728 (D. Kan. 2001) (trustee may recover payments made by the debtor on an unauthorized post-petition loan). Finally, the terms of the promissory note indicate that disbursements from Ferguson to Motiva were intended to comply with the Post-Judgment Order.

In support of his theory that he paid the Settlement Debt, Ferguson averred that "[t]he $40,000 transferred from WFA to Motiva's bankruptcy counsel and to the DIP account was a portion of my draw from WFA." This testimony apparently is at odds with Ferguson's testimony at the § 341 meeting:

> MR. EDELMAN: So does the law firm pay your personal obligations often?
> MR. FERGUSON: Not often.
> MR. EDELMAN: How many other times, other than this, has the law firm paid your personal obligations?
> MR. FERGUSON: Oh, six times a month.
> MR. EDELMAN: How are those transactions documented?
> MR. FERGUSON: Typically as a draw to me.
> MR. EDELMAN: Was there a draw issued for this $40,000?

---

[8] It is a common practice for third parties to pay debts. *See, e.g., In re Esparsen*, 545 B.R. 330, 333-34 (Bankr. D.N.M. 2016); *In re VandenBush*, 614 B.R. 306, 320 (Bankr. E.D. Wis. 2020); *see generally* Restatement (Third) of Restitution and Unjust Enrichment § 24 (2011), Performance of an Independent Obligation (Equitable Subrogation) (addresses the situation of a third party paying the obligations a debtor owes a creditor).

MR. FERGUSON: No.

At trial, Ferguson will need to explain this apparent conflict in his testimony.

The Court has no bookkeeping evidence about how Ferguson, Motiva, and WFA treated the $40,950 in payments. At trial, the parties should present accounting and tax records, together with witness testimony, showing each parties' intent with respect to, and handling and characterization of, the payments.

2. <u>If Ferguson has not yet paid the Settlement Debt, there is a fact issue about whether it should be paid to Motiva or Butler</u>. If, after trial, the Court finds that Ferguson still owes $40,000 to the Motiva estate, the Court would have to construe the Post-Judgment Order and determine whether the debt should be paid to Motiva or Butler. On the other hand, if the Court finds that Ferguson *did* pay the Settlement Debt to Motiva, the Court or the state court might have to decide whether the payment violated the Post-Judgment Order and, if so, what the consequences would be.[9] The avoidability of Butler's garnishment lien may be an issue. *See, e.g., In re Dura-Bilt Homes, Inc.*, (Bankr. M.D. Ala. 1989) (fixing of a garnishment lien on a bank account is a transfer under § 547).

---

[9] The Post-Judgment Order directs that Ferguson pay the Settlement Debt to Butler "by means of execution or garnishment." If the order is in the nature of a garnishment writ or order, certain consequences could follow. *See, e.g.*, NMSA § 35-12-3(C) ("After service of a garnishment on the garnishee, it is unlawful for the garnishee to pay to the defendant in the action any debt or to deliver to him any personal property attached by the garnishment."); *see also Hanna v. McCrory*, 19 N.M. 183 (S. Ct. 1914) (bank that issued checks drawn on judgment debtor's account after receiving garnishment process was liable to the garnishing creditor for the value of the checks); *see generally Bray v. Ed Willey & Son*, 239 Ark. 855, 856 (1965) ("if the garnishee makes any payment to the defendant after the service of the writ of garnishment he does so at his own peril"); *In re Southwestern Glass Co, Inc.*, 332 F.3d 513, 516-17 (8th Cir. 2002) (quoting *Bray*); *Aly v. Hanzada for Import & Export Co., Ltd.*, 2019 WL 2419462, at *3 (W.D. Mo.) (garnishee which paid $680,000 to judgment debtor after service of a writ of garnishment is liable for such amount to the garnishing creditor); *In re Waltjen*, 150 B.R. 419, 426 (Bankr. N.D. Ill. 1993) (an action against an employer for its failure to comply with the garnishment procedures is not an action against the debtor when the creditor is solely seeking to recover from the employer).

## Conclusion

The Post-Judgment Order determined that Ferguson owed the Settlement Debt to Motiva. There is a genuine issue of fact about whether Ferguson paid the debt. If not, then Ferguson would owe it to Motiva or Butler. Otherwise, there would be fact and legal issues to resolve about the consequences of Ferguson's failure to comply with the Post-Judgment Order by paying the debt to Motiva rather than Butler. The Trustee's motion will be denied by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: May 19, 2022
Copies to: Counsel of record