In re:

MOTIVA PERFORMANCE Case No. 19-12539-t7
ENGINEERING, LLC,

    Debtor.

PHILIP MONTOYA, Chapter 7 Trustee,

    Plaintiff,

v. Adv. Pro. No. 21-1026-t

WILLIAM S. FERGUSON, DEALERBANK
FINANCIAL SERVICES, LTD.,
ARMAGEDDON HIGH PERFORMANCE
SOLUTIONS, LLC., ARMAGEDDON TOOL
& DIE, LTD., AVATAR RECOVERIES, LLC.,
and DAVID ROCHAU,

    Defendants.

## OPINION

    Before the Court are cross-motions for summary judgment. Having considered the parties' submissions, the docket, and the relevant law, the Court finds that the motions should be denied.

A.    <u>Facts</u>.[1]

    The following facts are relevant to the motions and are not in genuine dispute:

---

[1] The Court takes judicial notice of its docket and of relevant public records, including *In re William S. Ferguson, Esquire*, No. S-1-SC-38741 (NMSC June 10, 2021); *Creig Butler v. Motiva Performance Engineering, LLC, et al.*, Case No. D-202-CV-2017-01393, pending in the Second Judicial District of New Mexico, and the related appeal, New Mexico Court of Appeals case No. A-1-CA-38587. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

William Ferguson is a well-known local attorney, the sole owner of Will Ferguson and Associates ("WFA"), and a car aficionado.[2] Ferguson is the majority owner of Motiva Performance Engineering, LLC, a New Mexico limited liability company ("Motiva"). He is the sole owner of Armageddon High Performance Solutions, LLC ("Armageddon HPS"), Avatar Recoveries, LLC ("Avatar"), and DealerBank Financial Services, Ltd. ("DealerBank").[3] Ferguson controls Armageddon Tool & Die, Ltd. ("Armageddon TD").

Motiva.

Ferguson formed Motiva on April 11, 2007, to acquire and operate the assets of Speed Dreams, a "speed shop."[4] Initially, Motiva had three members, Ferguson (70%), David Rochau (15%), and Michael Smith (15%). Ferguson was the sole manager of Motiva when it was formed. The exact ownership of Motiva between 2007 and 2019 is not in the record, but it is undisputed that Ferguson, Rochau, Smith, and Scott Fox are or were members.[5] At some point Rochau became the managing member instead of Ferguson. It is not clear when this change occurred.

Motiva provided customers with high-level performance modifications, using after-market parts purchased from different vendors. Motiva owned at least one car dealer license (no. 12436) and, for a time, a showroom from which it sold cars on consignment, including some of Ferguson's cars. Motiva was located at 6919 Montgomery Blvd. NE, Albuquerque, NM, in a building leased from Avatar.

---

[2] Ferguson has 70-75 automobiles in his collection, a seat on the board of a national classic car auction company, an active car restoration business, and a car leasing company, among other things.
[3] DealerBank is a "floor plan" lender that does auto financing and leasing.
[4] The main assets purchased were four vehicle hoists, a dynamometer, and perhaps a parts washer.
[5] On the petition date, Ferguson owned 65%; Rochau 25%; and Fox 10%.

Ferguson used Motiva's dealer license to buy a number of cars. In these instances, Ferguson paid for the cars with his money but titled them in Motiva's name. The actual number of cars purchased this way is disputed.

The Ferrari.

In December 2014 Ferguson bought a 2012 Ferrari FF from a Texas dealer. Ferguson paid $200,000 for the car, drawn from a personal line of credit at Main Bank. Although Ferguson considered the Ferrari his, he titled it in Motiva's name.[6]

In 2016, the Ferrari was hit and damaged in WFA's parking lot. Motiva, represented by WFA, sued the person who hit the Ferrari. In 2017, Motiva and the driver's insurance carrier settled the lawsuit, pursuant to which the insurer issued a check to Motiva and WFA for $40,948.49 (the "Settlement Funds"). Ferguson deposited the Settlement Funds in his personal bank account.

The title of the Ferrari was transferred from Motiva to DealerBank on October 30, 2018. The transfer documents reflect a purchase price of $135,000. Motiva received no consideration for the transfer.

Other Vehicles.

A 2011 Rolls Royce Ghost was titled in Motiva's name. The Rolls Royce was transferred from Motiva to DealerBank on November 15, 2018. The purchase price was $100,000. Motiva received no consideration for the transfer.

A 2009 Aston Martin DBS was titled in Motiva's name. Motiva sold the Aston Martin for $124,000 to Late European[7] after November 1, 2016. The only consideration Motiva received was, at most, a sales commission, the balance going to Armageddon TD.

---

[6] Car dealers can transfer cars without paying excise tax. The New Mexico excise tax on used cars is 3%, so Ferguson avoided paying $6,000 in excise taxes by titling the Ferrari in Motiva's name.
[7] Apparently a car dealership.

A 1971 Jaguar XKE was titled in Motiva's name. The Jaguar was transferred from Motiva to Ferguson on August 7, 2019. The purchase price was listed as $8,200. Motiva received no consideration for the transfer.

A 1970 Jaguar XKE appears to have been titled in Motiva's name. The Jaguar appears to have been transferred to Ferguson on August 21, 2019, for a purchase price of $8,900.

A 2006 Toyota Tundra apparently was titled in Motiva's name. The Tundra apparently was transferred from Motiva to Armageddon TD on April 11, 2019. The purchase price was $3,000.

The Turbo Kits.

In 2011 Rochau and Ferguson began developing an aftermarket "turbo kit" to be sold to speed shops and individuals for installation on certain engines. Rochau had the expertise to do the development work and Ferguson had the resources to back the effort. They may have formed a joint venture called Motiva Research, Ltd., Armageddon Turbo Systems, or some combination thereof.[8] Ferguson and Rochau hired an engineer to produce a prototype turbocharger. After they were satisfied with the prototype, they turned the manufacturing over to Kooks Custom Headers, Inc., a North Carolina company that manufactures aftermarket automotive performance parts.

The earliest Kooks sales orders, for 27 turbo kits, are dated October 21, 2015. The kits were sold to "Armageddon Turbo Systems," with an address of 6919 Montgomery Blvd. NE. The kits were described as "Motiva-Armageddon Twin Turbo Kits." Between October 21, 2015, and September 9, 2016, Kook sales orders reflect the sale of 361 turbo kits to Armageddon Turbo

---

[8] This is disputed. Plaintiff asserts that the turbocharging enterprise held itself out as a division of Motiva. A YouTube video published March 24, 2012, describes "Armageddon Turbo Systems" as "Motiva's own R&D Laboratory." Furthermore, Defendants stated in their answer to the complaint that "the investment for turbo parts was transferred on the balance sheets from Motiva to the new entity as loan capital, and the inventory went on Armageddon Turbo's books at cost."

System, for a total purchase price of $655,565. There is little in the record to show how turbo kit purchases, sales, and inventory were accounted for.

Armageddon HPS was organized on March 3, 2017. Ferguson and Rochau are the only members (their percentage interest are not part of the record). Ferguson is the only manager. Presumably, Armageddon HPS took over the "Armageddon Turbo Systems" business, but there is little in the record about Armageddon HPS's initial capitalization, assets, liabilities, business operations, or sales.

The turbo kits were sometime referred to by the name "Mot-Arm" or "Motiva-Armageddon." The extent to which the turbo kits were marketed to the public using these names is disputed. When one of the turbo kits was exported from the United States, Rochau designated the shipper's name as "Motiva Performance dba Armageddon Turbo Systems."

All turbo kits were stored on Motiva's premises at 6919 Montgomery NE, Albuquerque, NM. There is no evidence about which business carried the turbo kits on its balance sheet.

<u>The Dispute with Creig Butler</u>.

Creig Butler hired Motiva to upgrade a 2009 Hummer H3TX. The work did not go well. Butler sued Motiva on February 28, 2017, in the Second Judicial District, State of New Mexico, No. D-202-CV-2017-01393 (the "State Court Action"). In his complaint, Butler alleged that Motiva agreed to upgrade the Hummer for $20,000. Butler further alleged that, two years and $70,000 later, the Hummer was unsafe to drive.

WFA represented Motiva in the State Court Action. On October 26, 2018, after a four-day jury trial, the jury returned a verdict against Motiva for $292,001 plus costs, attorney fees, and post-judgment interest. The judgment was increased on April 3, 2019, to $337,317.90, apparently to add the attorney fees and costs.

Post-Judgment Actions.

After the Butler verdict, Ferguson and Rochau agreed there was no reason to continue operating Motiva.

On November 26, 2018, the state court issued a writ of execution directing the Bernalillo County sheriff to seize Motiva's assets to satisfy Butler's judgment. The sheriff served the writ and attempted to seize, inter alia, the turbo kits at Motiva's premises. The execution was interrupted by Ferguson, who asserted that Avatar had a landlord's lien on the turbo kits.

The foiled execution led Butler to file an application for a writ of attachment or preliminary injunction freezing Motiva's assets, including the Ferrari. The state court orally granted the application on April 18, 2019. For the next two weeks Ferguson and Butler's counsel negotiated a form of injunction order. On May 7, 2019, the state court entered a Preliminary Injunction and Order on Application for Writ of Attachment. On June 28, 2019, the state court issued an order adding Armageddon HPS, Ferguson, and DealerBank as "relief defendants" in the State Court Action.

WFA represented Armageddon HPS, DealerBank, and Ferguson in the State Court Action, and also continued to represent Motiva.

Butler filed a Motion for Declaration of Ownership in the State Court Action, claiming that Motiva owned the Ferrari and the turbo kits. WFA filed separate responses to the motion on behalf of Motiva and the relief defendants, opposing the requested relief.

In early October 2019 the state court held an evidentiary hearing on the motion. The result was Findings of Fact and Conclusions of Law, entered October 28, 2019 (the "Post-Judgment Order"). In the Post-Judgment Order the state court found or concluded, inter alia:

> 9. Deputy Gutierrez located an inventory at the Premises which consisted of 40 to 50 boxes of turbo kits and related items (the "Inventory"). . . .

> 116. The Ferrari was owned by Motiva From December 23, 2014 until November 2018, and remains Motiva's property currently . . . .
>
> 128. The Inventory, and any proceeds from its sale obtained after December 5, 2018 (whether those proceeds are in the possession or within the control of Ferguson, Motiva, Armageddon, Avatar, DealerBank, or their employees or successors) is owned by Motiva, and is subject to execution and/or garnishment.

<u>Motiva's Chapter 11 Bankruptcy</u>.

On November 1, 2019, in response to the Post-Judgment Order, Motiva filed this case as a chapter 11 case. Shortly after the case was filed, Motiva sent a demand letter to Ferguson, demanding turnover of the Settlement Funds.

Rochau testified at Motiva's 341 meeting that he did not know Ferguson had pledged the Ferrari to Main Bank as collateral in April of 2019. He also testified that it was possible Ferguson used Motiva's dealer's license without Rochau's knowledge.

On January 17, 2020, Motiva filed a motion to sell the turbo kits on hand, in cooperation with Armageddon HPS. Under the proposed arrangement, Motiva would receive $1,695 for the sale of each GM 1500 kit and $2,695 for each Mustang GT kit.

Motiva filed an adversary proceeding for turnover on January 21, 2020, seeking turnover of the Ferrari, the turbo kit inventory identified in the Post-Judgment Order, and the Settlement Funds. Ferguson, DealerBank, and Armageddon HPS were named as defendants.

On April 15, 2020, two days before the final hearing on the motion to sell, Motiva agreed to convert the case to chapter 7. Phillip Montoya (the "Plaintiff" or "Trustee") was appointed chapter 7 trustee.

<u>Actions Taken in the Chapter 7 case</u>.

On September 10, 2020, the Trustee filed a motion to approve a compromise of certain disputes with Ferguson, Armageddon HPS and DealerBank (the "Compromise Motion"). Under the compromise, Ferguson agreed to cause Motiva to turn over $30,938.49 in the debtor in

possession account to the Trustee, while the Trustee agreed to sell the turbo kits to Armageddon HPS for $20,000. The Court approved the compromise motion on October 29, 2020 (the "Compromise Order").

The Trustee and the defendants settled the turnover action in December 2020 (the "Turnover Settlement"). Under the settlement, defendants turned over the Ferrari and the parties agreed to dismiss the action without prejudice. No settlement was reached regarding whether Ferguson had turned the Settlement Funds over to Motiva. The Turnover Settlement recited that the estate's claim for turnover of the turbo kits had been settled pursuant to the Compromise Motion and Order.

Plaintiff filed this adversary proceeding on September 2, 2021.

Motiva's Solvency.

Both sides retained expert witnesses to opine about Motiva's solvency. The experts have conflicting opinions about whether and when Motiva became insolvent. Among other disputes, the experts disagree about whether Ferguson's investment in Motiva is properly characterized as debt or equity. They also disagree about asset valuation and when Butler's claim should be recognized as a liability, and for how much.

B.  Summary Judgment Standards.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" thereby entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material when it "might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). In ruling on a motion for summary

judgment, the Court is required to "view the facts and draw reasonable inferences in the light most favorable to the party opposing the . . . motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

C. <u>Plaintiff's Motion for Partial Summary Judgment Must be Denied</u>.

Plaintiff's seeks a narrow summary judgment, i.e., that Motiva's transfers of the Ferrari and the Rolls Royce should be set aside under federal and/or state law fraudulent transfer laws. Granting the motion would result in a partial judgment under Counts II-V.

 1. <u>Actual Fraud (Counts II and IV)</u>.

In determining whether a transfer was done with the intent to hinder, delay, or defraud creditors, bankruptcy courts consider certain "badges of fraud," from which intent may be reasonably inferred. In *In re Taylor*, 133 F.3d 1336, 1338 (10th Cir. 1998), the court listed the various badges of fraud, taken from the Uniform Fraudulent Transfer Act:

> (a) the transfer or obligation was to an insider;
> (b) the debtor retained possession or control of the property transferred after the transfer;
> (c) the transfer or obligation was disclosed or concealed;
> (d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (e) the transfer was of substantially all the debtor's assets;
> (f) the debtor absconded;
> (g) the debtor removed or concealed assets;
> (h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (j) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (k) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

133 F.3d at 1338; *see also In re All Phase Roofing and Construction*, *LLC*, 2020 WL 5512500, at *5 (10th Cir. BAP 2020) (unpublished) (citing *Taylor*); *In re Kendall*, 491 B.R. 191, at *5 (10th Cir. BAP 2013) (unpublished) (same). Defendants assert that the badges of fraud show a lack of

fraudulent intent. Plaintiff strongly disagrees. The Court concludes that there are fact issues about whether Motiva transferred the Ferrari and Rolls Royce with fraudulent intent. The Court therefore will deny the summary judgment motion on the actual fraud claims.

In a related matter, Defendants argue that Plaintiff's motion should be denied with respect to the Ferrari because the Turnover Settlement resolved and mooted the claim. The argument must be overruled. § 550(a) allows a trustee to "recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . ." Presumably, for example, § 550(a) allows a bankruptcy court to award a trustee a money judgment if a transferee returns fraudulently transferred personal property that was damaged or destroyed while in the transferee's possession. Here, Plaintiff claims that the Ferrari was worth more when it was transferred than when DealerBank surrendered it. Furthermore, the state fraudulent transfer statute allows the Court to award "any other relief the circumstances may require." NMSA § 56-10-21(A)(3)(c). It is debatable whether the Turnover Settlement settled these claims.

Finally, Defendants argue that Motiva was not the beneficial owner of the Rolls Royce, so there could be no fraudulent transfer. Defendants will be given an opportunity to litigate this disputed issue at trial.

2. <u>Constructive Fraud</u>. Plaintiff's federal and state law "constructive fraud" claims hinge on two issues: whether Motiva received reasonably equivalent value for the transfers of the Ferrari and Rolls Royce, and whether Motiva was insolvent when the cars were transferred. There are genuine fact issues about both.

Defendants argue that reasonably equivalent value was received for the Rolls Royce because Motiva did not own it. They should be allowed to try this issue. For the Ferrari, the Post-Judgment Order forecloses this argument, but Defendant argue settlement, discussed above.

With respect to solvency, the parties' expert witnesses are reputable and experienced accountants. They spent considerable time analyzing Motiva's books and records and came to opposite conclusions. Under these circumstances, summary judgment based on a finding of insolvency would not be appropriate.

Plaintiff's motion for partial summary judgment on his actual and constructive fraudulent transfer claims related to the Ferrari and the Rolls Royce will be denied.

D. <u>Defendants' Motion for Partial Summary Judgment Must Be Denied</u>.

In contrast to Plaintiff's "rifle shot" motion, Defendants ask for summary judgment on all claims except for turnover of the Settlement Funds.

1. <u>Count I (Turnover)</u>. In Count I, Plaintiff demands turnover of, inter alia, the value of the turbo kits allegedly converted prepetition by Avatar and/or Armageddon HPS. Defendant seeks summary judgment on this claim, arguing that Plaintiff settled it with the Compromise Motion and Order. Defendants point to the language in the Compromise Order that "any dispute over the ownership of the Inventory is hereby resolved upon the entry of this order. . . ."

The Court will deny Defendant's request for partial summary judgment on this issue. Defendants' argument turns on the meaning of "Inventory" in the Compromise Motion and Order. If it means the turbo kits on hand on the petition date, then Defendants' argument lacks merit. If "Inventory" means the turbo kits on hand on December 5, 2018 (see the Post-Judgment Order),[9] many of which had been sold prepetition, then Defendants' argument could have some merit. The

---

[9] When the state court defined "Inventory" in its Findings and Conclusions, the term meant "40 to 50 boxes of turbo kits and related items." That definition was based on Bernalillo County Deputy Sheriff Carlos Gutierrez' testimony about what he found at Motiva's premises on December 5, 2018 when he went to execute on Butler's state court judgment

-11-
Case 21-01026-t    Doc 54    Filed 07/15/22    Entered 07/15/22 14:32:23 Page 11 of 15

Court concludes that, at a minimum, there is a genuine fact issue about whether the claim was settled. The Court reaches this conclusion for the following reasons:

- The Compromise Motion provides that Armageddon HPS would purchase the Inventory, which would be "quitclaimed" by Motiva to Armageddon HPS. There is no mention of any claims being released or settled. Claims are not tangible property, and typically are not settled by quitclaiming them to the defendant;
- Elsewhere in the Compromise Motion the parties state: "The sale of the Inventory to parties other than the Ferguson Parties is fraught with potential litigation and potentially limitedvalue due to the claimed intellectual property interests of Armageddon High Performance Solutions LLC and the fact that the kits require additional parts and installation." This language implies that the Inventory is tangible personal property;
- Butler objected to the Compromise Motion, stating that "As to the Compromise, Mr. Butler requests clarity as to whether the estate is releasing any claims in exchange for the "Settlement Offer" as defined in the Motion." This objection was resolved to Butler's satisfaction by entry of the Compromise Order, which he approved;
- The claim at issue is asserted to be worth $283,806.25. It is not plausible that the parties would settle the claim without including specific, detailed, and customary settlement and release language in the Motion, notice, and Order.

The Court concludes that Defendants are not entitled to summary judgment that the $283,806.25 turnover claim was settled.

2. <u>Count II (Fraudulent Transfer Under § 548(a)(1)(A))</u>. Plaintiff seeks to avoid as fraudulent the prepetition transfers of the Ferrari, Rolls Royce, Aston Martin, Jaguars, and Tundra, alleging that the cars were transferred with actual intent to hinder, delay, or defraud creditors. Defendants ask for summary judgment on this claim for two reasons. First, Defendants argue that the claim relating to the Ferrari was settled. Second, Defendants argue that Plaintiff has no evidence to support the allegation of actual intent to hinder, delay, or defraud creditors. Both of these arguments have been addressed above. There are material fact issues that preclude entry of summary judgment for Defendant.

3. <u>Count III (Fraudulent Transfer Under § 548(a)(1)(B))</u>. In Count III Plaintiff seeks to avoid the transfer of the Vehicles and the turbo kits because, inter alia, Motiva did not receive

-12-
Case 21-01026-t    Doc 54    Filed 07/15/22    Entered 07/15/22 14:32:23 Page 12 of 15

reasonably equivalent value for them. Defendants ask for summary judgment on this count, arguing that neither the Vehicles nor the turbo kits belonged to Motiva when it transferred them, so the value it received ($0) was equivalent to the value it had before the transfers ($0). The argument must be overruled. The facts Defendants cite in support of their position are either in genuine dispute or have been determined against them by the Post-Judgment Order. The vehicles other than the Ferrari all were titled in Motiva's name. A vehicle title is significant, albeit not dispositive, evidence of ownership. *See* NMSA § 66-1-4.13(G) (the "owner" of a motor vehicle is defined at "a person who holds the legal title" of the vehicle). The Post-Judgment Order rules that Motiva owned the Ferrari and the turbo kits.

4. <u>Count IV (Fraudulent Transfer Under State Law (Actual Fraud))</u>. Defendants are not entitled to summary judgment on this count, for the reasons discussed above.

5. <u>Count V (Fraudulent Transfer Under State Law (Constructive Fraud))</u>. Defendants are not entitled to summary judgment on this count, for the reasons discussed above.

6. <u>Count VI (Breach of Fiduciary Duties)</u>. Count VI seeks compensatory and punitive damages against Ferguson and Rochau for alleged breaches of fiduciary duty in their sale of the turbo kits. Defendants argue in their summary judgment motion that there could be no breach of fiduciary duty because "Motiva was not entitled to receive the proceeds from the sale of the . . . turbo kits." At best, there is a genuine dispute about this fact (see, e.g., the Post-Judgment Order), so summary judgment is not appropriate.

7. <u>Count VII (Alter Ego/Veil-Piercing)</u>.

Defendants ask for summary judgment on Count VII of the complaint, which seeks to hold Ferguson liable for Motiva's debts under a veil-piercing/alter ego theory. Defendants argue that Plaintiff has no evidence to support the theory.

Ordinarily, a corporation will "be treated as a legal entity separate from its shareholders." *Scott v. AZL Resources, Inc.*, 107 N.M. 188, 121 (S. Ct. 1988). Under this rule, individual shareholders cannot be held personally liable for the corporation's debts. *Id.* However, courts may pierce the corporate veil when "the corporation was set up for fraudulent purposes or where to recognize the corporation would result in injustice." *Id.* To pierce the corporate veil, the Plaintiff must show instrumentality or domination, improper purpose, and proximate cause. *Harlow v. Fibron Corp.*, 100 N.M. 379, 382 (Ct. App. 1983). "'Instrumentality' or 'domination' means proof that the subsidiary or other subservient corporation was operated not in a legitimate fashion to serve the valid goals and purposes of that corporation but it functioned instead under the domination and control and for the purposes of some dominant party." *Scott*, 107 N.M. at 121. In New Mexico, the "instrumentality" or "domination" requirement is referred to as the alter ego doctrine. *Id.*

The improper purpose requirement ensures that a shareholder is not held liable based on control alone. *Id.* Instead, "[s]ome form of moral culpability attributable to the [shareholder], such as use of the [corporation] to perpetrate a fraud is required." *Id. See also Garcia v. Coffman*, 124 N.M. 12, 17 (Ct. App. 1997) (listing examples of improper purpose).

Proximate cause is demonstrated through evidence of "some knowing or cooperative effort between the related parties which results in unjust injury to the plaintiff, even though it may not be possible to prove that the defendant's control directly caused [the] plaintiff's injury." *Coffman*, 124 N.M. at 17.

Contrary to Defendants' assertion, there is evidence that would support a veil-piercing judgment, including Ferguson's control of Motiva; Motiva's capitalization and/or undercapitalization; the challenged transfers after entry of the Butler verdict; Ferguson's use of

Motiva's dealer license to avoid paying excise tax; the possible comingling of Motiva's and Armageddon HPS's assets; Avatar's assertion of a landlord's lien; and WFA's representation of all Defendants. This evidence creates a material fact issue, precluding summary judgment.

    8.    <u>Count VIII (Disallowance of Claims)</u>.

Count VIII asks the Court to disallow the Defendants' claims under § 502(d), which provides in part that the Court "shall disallow any claim of any entity from which property is recoverable under section . . . 550 or . . . is a transferee of a transfer avoidable under section . . . 548 . . . unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable . . . ." Defendants ask for summary judgment on this count if they are granted summary judgment on the remaining counts. As the Court will deny their summary judgment motion on Counts I-VII, however, they are not entitled to summary judgment on Count VIII.

<u>Conclusion</u>.

The Court will deny the cross-motions for partial summary judgment by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: July 15, 2022
Copies to: Counsel of record