UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

MOTIVA PERFORMANCE
ENGINEERING, LLC,

    Debtor.

PHILIP MONTOYA, Chapter 7 Trustee,

    Plaintiff,

v.

WILLIAM S. FERGUSON, DEALERBANK
FINANCIAL SERVICES, LTD,
ARMAGEDDON HIGH PERFORMANCE
SOLUTIONS, LLC, ARMAGEDDON TOOL
& DIE, LTD, AVATAR RECOVERIES, LLC,
and DAVID ROCHAU,

    Defendants.

Case No. 19-12539-t7

Adv. Pro. No. 21-1026-t

## OPINION

Before the Court is Defendants' motion to exclude Plaintiff's expert witness from testifying at trial. Defendants argue that the expert witness is being paid a contingent fee, which disqualifies him from testifying. Defendants also argue that the expert's testimony should be excluded under the *Daubert* "junk science" rule. The Court will overrule the first argument and defer ruling on the second until the conclusion of trial.

A.    <u>Facts</u>.[1]

The Court finds the following facts for the limited purpose of ruling on the motion:

---

[1] The Court takes judicial notice of its docket and of relevant public records, including *Creig Butler v. Motiva Performance Engineering, LLC, et al.*, Case No. D-202-CV-2017-01393, pending in the Second Judicial District of New Mexico (the "State Court Action"). *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

William Ferguson is a well-known local attorney, the sole owner of the law firm Will Ferguson and Associates ("WFA"), and a car aficionado. Ferguson is the majority owner of Motiva Performance Engineering, LLC, a New Mexico limited liability company ("Motiva").

Ferguson formed Motiva on April 11, 2007, to acquire Speed Dreams, a "speed shop." Motiva provided customers with high-level performance modifications, using after-market parts purchased from different vendors. Motiva owned at least one car dealer license and, for a time, a showroom from which it sold cars on consignment, including some of Ferguson's cars.

Using its dealer license, Motiva had a number of cars titled in its name that Ferguson claims he paid for and belong to him, including a 2012 Ferrari FF.

Creig Butler hired Motiva to upgrade a 2009 Hummer H3TX. The work did not go well. Butler sued Motiva on February 28, 2017, commencing the State Court Action. In his complaint, Butler alleged that Motiva agreed to upgrade the Hummer for $20,000 but that, two years and $70,000 later, the Hummer was unsafe to drive.

On October 26, 2018, after a four-day jury trial, the jury returned a verdict against Motiva for $292,001 plus costs, attorney fees, and post-judgment interest. The judgment was increased on April 3, 2019, to $337,317.90, apparently to add the attorney fees and costs.

On November 1, 2019, Motiva filed this case as a chapter 11 case. The case converted to chapter 7 on April 15, 2020. Phillip Montoya (the "Plaintiff" or "Trustee") was appointed chapter 7 trustee. The trustee filed this adversary proceeding on September 2, 2021. His complaint includes four counts seeking to avoid alleged fraudulent transfers.

Both sides retained expert witnesses to opine about Motiva's solvency when the transfers occurred; the trustee retained Keith Bierman, CPA, of MCA Financial Group, Ltd ("MCA"), while

Defendants retained John Howard, CPA, of Baca & Howard, P.C. The experts have conflicting opinions about whether and when Motiva became insolvent.

B.  Bierman's Fee Agreement Does Not Preclude Him From Testifying.

1.  Bierman's fee is not contingent. Bierman agreed to bill the estate by the hour. He also agreed that, regardless of the amount billed, MCA would only have the right to be paid $20,000 when its first fee application was approved. The balance of the fees would be paid pro rata with other administrative expenses.

Under the Bankruptcy Code, contingent fees generally are pre-approved under § 328(a). Bierman's employment application, which included his firm's hourly rates, was approved under § 327(a). No contingent fee was mentioned in the application or order. The Court concludes that Bierman's fee is not a contingent fee. *See, e.g., Taylor v. Cottrell, Inc.*, 795 F.3d 813, 817 (8th Cir. 2015) (no contingent fee if the expert billed by the hour, even if it was unlikely the plaintiff could pay the fee unless there was a recovery); *Webb v. Hyman*, 861 F. Supp. 1094, 1115, n.4 (D.D.C. 1994) (the fact that a recovery might allow plaintiff to pay her expert witness amounts owed for treatment is "not the classic sort of contingent-fee arrangement"); *Andover Healthcare, Inc. v. 3M Company*, 2016 WL 6246360, at *7 (D. Del.) (indirect financial interest in the outcome is not a contingent fee).

Bierman's fee is "contingent" only in the sense that the estate must have enough money to pay him. If this type of credit risk is enough to bar Bierman from testifying, then no bankruptcy trustee overseeing a potentially insolvent estate could retain an expert witness. Such a rule would be a serious blow to the rights of creditors. *See, e.g., In re Joy Recovery Technology Corp.*, 286 B.R. 54, 69 (Bankr. N.D. Ill. 2002) ("the court is unwilling to sanction Joy's creditors by barring

-3-

evidence from their key witness because the Plaintiff [chapter 7 trustee] ran out of funds to pay him.").

2. <u>New Mexico law does not prohibit contingent fees for expert witnesses</u>. Unlike many jurisdictions, New Mexico does not prohibit paying an expert witness a contingent fee. Rule 16-304(B) of the New Mexico Rules of Professional Conduct provides:

> A lawyer shall not . . . falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law.

There is no New Mexico statute or case law prohibiting the payment of a contingent fee to an expert witness. *See* Ethics Advisory Committee, *Formal Opinion 2008-1*, Bar Bulletin, June 30, 2008, at 16,[2] which reached that conclusion.[3] The committee opined that New Mexico *should* adopt such a law or rule, but that is a different matter.

Because New Mexico does not prohibit contingent fees for expert witnesses, experts who receive such fees cannot be barred from testifying on that basis. Instead, opposing counsel should cross-examine the experts about bias, credibility, and motive. *See generally State v. Brown*, 100 N.M. 726 (S. Ct. 1984) ("[m]atters affecting the witness's bias or motive to testify falsely are to be attacked through cross-examination, rather than the exclusion of a witness."); *State v. Romero*, 2015 WL 7199014, at *6 (N.M. App.) (quoting *Brown*).

In any event, the Court wonders whether hourly expert witnesses are significantly less biased than contingent fee experts. As Judge Gorsuch observed in *Pace v. Swerdlow*, 519 F.3d 1067, 1077 (10th Cir. 2008):

---

[2] https://www.sbnm.org/Leadership/Committees/Ethics-Advisory-Committee/Ethics-Advisory-Opinions.
[3] According to the State Bar of New Mexico's website, "The New Mexico Ethics Advisory Committee of the State Bar of New Mexico is a volunteer committee composed of New Mexico lawyers who practice is a variety of areas and a located geographically throughout the state." Ethics Advisory Committee (sbnm.org).

-4-
Case 21-01026-t    Doc 74    Filed 08/03/22    Entered 08/03/22 15:56:48 Page 4 of 12

> Parties already exert substantial influence over expert witnesses, often paying them handsomely for their time, and expert witnesses are, unfortunately and all too frequently, already regarded in some quarters as little more than hired guns.

519 F.3d at 1077 (concurring in part); *see also Tagatz v. Marquette University*, 861 F.2d 1040, 1042 (7th Cir. 1988) ("hired experts, who generally are highly compensated—and by the party on whose behalf they are testifying—are not notably disinterested"); *Campos v. MTD Products, Inc.*, 2009 WL 920337, at *2 (M.D. Tenn.) (discussing the concern that expert witnesses are "hired guns"); *Profitt v. Highlands Hospital Corp.*, 2021 WL 5435171, at *4 (E.D. Ky.) (same); *Chavez v. Marten Transport, Ltd.*, 2011 WL 13112997, at *1 (D.N.M.) (same); *Gawel v. Schatten*, 109 F. Supp. 2d 719, 723 (E.D. Mich. 2000) (discussing a Michigan statute designed to avoid having "hired guns" testify in medical malpractice trials); *Tenzer v. Lewitinn*, 599 F. Supp. 973 (S.D.N.Y. 1985 (describing expert witnesses as "hired guns"). Unless a neutral expert is appointed under Federal Rule of Evidence 706, trial courts generally assume that expert witnesses hired by the parties are biased. Bias does not render their opinions worthless, but does call for careful cross-examination and fact-finding.

3. <u>Even if Bierman agreed to a prohibited contingent fee, it does not follow that his testimony should be excluded.</u> There is a distinction between the violation of an ethical rule (if one applies) and the exclusion of admissible evidence. In *Hiland Hills Townhouse Owners Assn. v. Owners Ins. Co.*, 2022 WL 2198262 (D. Colo.), for example, Judge Krieger declined to adopt a per se prohibition against experts testifying if they had agreed to a contingent fee. She concluded that "Colorado clearly uncouples the ethical question of whether it is proper for an attorney to proffer a financially-interested expert from the evidentiary question of whether that expert's opinions are admissible. Instead, the question is whether the expert's opinions survive scrutiny under the Fed. R. Evid. 403 balancing test." *Id.* at *10.

Judge Posner came to the same conclusion in *Tagatz*: "It is unethical for a lawyer to employ an expert witness on a contingent-fee basis . . . but it does not follow that evidence obtained in violation of the rule is inadmissible." 861 F.2d at 1042. For similar cases, *see Robinson v. Nationstar Mortg. LLC*, 2019 WL 4261696, at *12 (D. Md. 2019); *Mirowski Fam. Ventures, LLC v. Bos. Sci. Corp.*, 2013 WL 441540, at *3 (S.D. Ind. 2013); *Webb v. Hyman*, 861 F. Supp. 1094, 1115 n.4 (D.D.C. 1994) (citing *Tagatz*); *Patent Category Corp. v. Target Corp.*, 2008 WL 11336468, at *2 (C.D. Cal.) (same); *Straughter v. Raymond*, 2011 WL 1789987, at *3 (C.D. Cal.) (same); *Cooper v. Meritor, Inc.*, 2019 WL 545187, at *27 (N.D. Miss.) (same).

4. <u>Bierman is a "professional person</u>." In a related matter, Defendants argue that approval of Bierman's retention as a "financial consultant" did not approve his testifying as an expert witness because "professional persons" under § 327 do not include expert witnesses. This argument is overruled. While some expert witnesses may not be "professional persons," *see, e.g., In re Ponce Marine Farm, Inc.*, 259 B.R. 484, 494 (D.P.R. 2001) (wetlands expert and professional photographer held not to be professional persons), and there is case law that expert witnesses need not be employed by the estate if they are retained by counsel employed under § 327, *see, e.g.*, *In re Napoleon*, 233 B.R. 910, 912 (Bankr. D.N.J. 1999), Bierman *was* employed by the estate under § 327. The estate retained him shortly after the adversary proceeding was filed, so it is no surprise that Bierman was asked to work on it. Bierman is a "professional person" and the Court approved his hourly fee arrangement.

In summary, the Court does not believe that Bierman's fee is contingent; nor that it would be good policy to deny bankruptcy trustees the right to hire expert witnesses when their estates were insolvent; nor that New Mexico prohibits paying expert witnesses contingent fees; nor that,

if such a prohibition existed, an expert's testimony would necessarily be barred. Defendants' contingent fee argument is overruled.

C. The Court Will Defer Ruling on Defendants' *Daubert* Motion Until After Trial.

1. *Daubert/Kuhmo* gatekeeping. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), assigned to trial courts "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert*). While *Daubert* dealt with science experts, *Kuhmo* addressed how trial courts should discharge their "gatekeeping" function when the expert testimony is not based on scientific knowledge. *Id.* The *Kuhmo* court held that in such cases the test of reliability is flexible and "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* (italics in original).

Fed. R. Evid. 702 was revised in 2000 to conform to *Daubert* and *Kumho*. *See* Fed. R. Evid. 702 Advisory Committee Notes. The rule now provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

2. Bench trials v. jury trials. The gatekeeping function applies in bench trials as well as jury trials. *See, e.g., Seaboard Lumber Co., v. United States*, 308 F.3d 1283, 1302 (Fed. Cir. 2002). However, bench trial courts have much more flexibility in discharging their gatekeeping duties. In *Attorney General of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009), for example, the Tenth Circuit held:

Furthermore, while *Daubert*'s standards must still be met, the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial. *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1302 (Fed. Cir. 2002).

Similarly, *Smithkline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011 (N.D. Ill. 2003), Judge Posner (sitting by designation) opined:

> The primary purpose of the *Daubert* filter is to protect juries from being bamboozled by technical evidence of dubious merit . . . . In a bench trial it is an acceptable alternative to admit evidence of borderline admissibility and give it the (slight) weight to which it is entitled. The Federal Circuit in *Seaboard Lumber Co. v. United States, supra,* 308 F.3d at 1302 . . . did say that the *Daubert* standard must be followed in bench trials as well. But it did not say that it must be followed *rigidly* in such trials. *Daubert* requires a binary choice–admit or exclude–and a judge in a bench trial should have discretion to admit questionable technical evidence, though of course he must not give it more weight than it deserves.

247 F. Supp. 2d at 1042; *see also Grand Isle Shipyards, Inc. v. Black Elk Offshore Operations, LLC*, 2021 WL 533706, at *3 (E.D. La.) (quoting *Apotex*); *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."); *Deal v. Hamilton County Bd. Of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004) ("The 'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial"); *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018) (quoting *Deal*); *Ramos v. Banner Health*, 426 F. Supp. 3d 815, 820 (D. Colo 2019) (quoting *Tyson Foods*); *Nutritional Biometics, LLC v. Empirical Labs Inc.*, 2018 WL 11083678, at *2 (D. Colo.) (same); *Ramah Navajo School Board, Inc. v. Sebelius*, 2013 WL 12303945, at *14 (D.N.M.) (same); *see generally Dollar Rent A Car Systems, Inc. v. P.R.P. Enterprises, Inc.*, 242 Fed. App'x 584, 588 (10th Cir. 2007) (unpublished) ("when the district court sits as fact-finder in a bench trial, the court has the right to evaluate for itself the credibility of the testifying witness.").

3. <u>In bench trials, courts may rule on *Daubert* motions after trial</u>. Because of the relaxed gatekeeping function in bench trials, judges may allow *Daubert*-challenged experts to testify at trial and rule on the challenges thereafter. Such a procedure was approved in *Tyson Foods*:

> In making its determination here, the district court admitted all proffered expert testimony, denying Tyson Foods's motion to exclude . . . Subsequently, the court relied on *Daubert* to govern the weight accorded to that evidence.

565 F.3d at 780. The district court's judgment was affirmed. Similarly, in *U.S. v. Brown*, 415 F.3d 1257 (11th Cir. 2005), the Eleventh Circuit held:

> Because this was a bench trial, the district court was not only the gatekeeper but also the factfinder. The district court as gatekeeper did not exclude any of Steele's testimony. Instead, it allowed Steele to testify, explicitly reserving for later the determination of whether his testimony complied with *Daubert* and Rule 702. The court later determined that it was "unwilling to qualify Dr. Steele as an expert with knowledge in the area of controlled substances, especially [1,4–butanediol] and GHB." Nevertheless, the court "still consider[ed] Dr. Steele's testimony, but his lack of expertise in the area substantially affect[ed] the weight" the court gave it. *Id.* at 1245. In other words, the court-as-gatekeeper let the court-as-factfinder consider Steele's testimony, but the court-as-factfinder decided not to give it much weight.

415 F.3d at 1269-70. In *Gonzales v. Nat'l Bd. Of Medical Examiners*, 225 F.3d 620, 635 (6th Cir. 2000), Judge Gilman said in his dissent that:

> [d]istrict courts conducting bench trials have substantial flexibility in admitting proffered expert testimony at the front end, and then deciding for themselves during the course of trial whether the evidence meets the requirements of *Kumho Tire Co.* and *Daubert* and deserves to be credited.

Finally, in *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006), the Seventh Circuit ruled:

> It is not that evidence may be less reliable during a bench trial; it is that the court's gatekeeping role is necessarily different. Where the gatekeeper and the factfinder are one and the same—that is, the judge—the need to make such decisions prior to hearing the testimony is lessened. See *United States v. Brown,* 415 F.3d 1257, 1268–69 (11th Cir. 2005). That is not to say that the scientific reliability requirement is lessened in such situations; the point is only that the court can hear the evidence and make its reliability determination during, rather than in advance

of, trial. Thus, where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702.

465 F.3d at 777; *see also Ass Armor, LLC v. Under Armour, Inc.*, 2016 WL 7156092, at *4 (S.D. Fla.) ("As this is a bench trial without a jury, however, the need for an advance ruling to exclude [expert] testimony is superfluous and unnecessary."); *Easterwood v. Carnival Corp.*, 2020 WL 6880369, at *3 (S.D. Fla.) (collecting and quoting cases).

4. <u>Non-scientific experts generally should be allowed to testify in bench trials</u>. For non-scientific experts who rely on professional judgment or experience, e.g., appraisers, business valuators, and accountants, it usually is better to allow them to testify and be cross-examined, rather than bar their testimony after a *Daubert* hearing. In *In re Commercial Financial Servs.*, 350 B.R. 520 (Bankr. N.D. Okla. 2005), Judge Rasure opined:

> Experts in disciplines that require the use of professional judgment are less likely candidates for exclusion because challenges may be ultimately viewed as matters in which reasonable experts may differ in exercising their judgments as to the appropriate variable to plug into a calculation, ... Such matters may be and should be explored and highlighted through cross-examination of the expert and presentation of contrary evidence, not at the preliminary admissibility stage. . . . . a probing cross-examination and presentation of opposing experts and evidence will permit the fact-finder to judge the soundness of the expert's judgment, as well as the expert's credibility and potential bias, in order to assess how much weight to accord the expert's opinion.

350 B.R. at 528-29; *see also Joy Recovery*, 286 B.R. at 70 ("Accounting is not an exact science. Accountants are therefore required to make judgments about how to communicate financial information. A *Daubert* hearing is not the time to fully test the validity of those assumptions."); *In re Seasons Partners LLC*, 2011 WL 13137115, at *12 (D. Ariz.) (citing *Commercial Financial Services*); *Qwest Corp. v. City of Santa Fe*, 2013 WL 12239492, at *3 (D.N.M.) (quoting *Commercial Financial Services* with approval); *In re Vitamin C Antitrust Litigation*, 2012 WL 6675117, at *5 (E.D.N.Y.) (same); *Rover Pipeline, LLC v. 10.55 Acres of Land*, 2018 WL

4386024, at *11 (N.D. Ohio) (same); *Procter & Gamble Co. v. Haugen*, 2007 WL 9782772, at *3 (D. Utah) (same); *In re Masella*, 2007 WL 2302312, at *3 (Bankr. D. Conn.) (same); *In re DBSI Inc.*, 2018 WL 626167, at *1 (Bankr. D. Id.) (same); *In re Hake*, 2007 WL 7581218, at *4 (Bankr. N.D. Ohio) (same). The Court agrees with *Commercial Financial Services*.

Of course, there will be times when the non-scientific expert brings nothing useful to the table. That was Judge McNamara's conclusion in *In re Blair*, 588 B.R. 605 (Bankr. D. Colo. 2018):

> The base-line for admissibility is whether the proposed expert testimony would assist the Court in any meaningful way. The Expert Report proffered by Mark Dennis and the Chapter 7 [trustee] does not. It is unreliable, irrelevant, and inadmissible.

588 B.R. at 625. In such cases it is appropriate to bar the expert's testimony, perhaps in the hope that the party may retain a more helpful expert. The Court does not place Bierman in the same category as the expert in *Blair*. The Court anticipates that Bierman's testimony will be helpful.

Defendants criticize Bierman's decision to discount Motiva's accounts receivable by 25%; to discount Motiva's inventory and equipment by 50%; and to give no value to Motiva's leasehold and the Ferrari. Defendants also criticize Bierman's inclusion of three liabilities on Motiva's balance sheet—a loan from Main Street Bank (secured by the Ferrari); a contingent liability to David Purcella for a property damage/injury claim; and Creig Butler's claim. Bierman disagrees with Defendants' criticisms and given reasons for his disagreements.

The Court concludes that the most helpful procedure will be to hear the direct and cross-examination testimony of both expert witnesses. The testimony should assist the Court in making a finding about solvency. At the proper time after Bierman testifies, the Court will rule on Defendants' *Daubert* motion.

## Conclusion

The Court will overrule Defendants' contingent fee argument and will defer ruling on the *Daubert* challenge to Bierman's testimony and expert reports until the conclusion of trial. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: August 3, 2022
Copies to: Counsel of record