UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MOTIVA PERFORMANCE ENGINEERING, LLC,

  Debtor.

Case No. 19-12539-t7

PHILIP MONTOYA, Trustee,

  Plaintiff,

v.

WILLIAM S. FERGUSON, DEALERBANK FINANCIAL SERVICES, LTD, ARMAGEDDON HIGH PERFORMANCE SOLUTIONS, LLC, ARMAGEDDON TOOL & DIE, LTD, AVATAR RECOVERIES, LLC, and DAVID ROCHAU,

  Defendants.

Adv. Pro. No. 21-1026-t

## OPINION

The Court tried the merits of this adversary proceeding in August 2022 and entered judgment against Defendants in October 2022. Defendants have filed a motion to reconsider and likely will appeal the final judgment if the motion is denied. In the meantime, Defendants have asked the Court to stay enforcement of the judgment and set a supersedeas bond. Plaintiff does not object to a bond being posted but disagrees with Defendants on the proper amount of the bond. The Court rules that the bond amount should be $810,000.

A. FACTS.[1]

---

[1] The Court takes judicial notice of its docket and of relevant public records, including the docket in *Creig Butler v. Motiva Performance Engineering, LLC, et al.*, Case No. D-202-CV-2017-01393, pending in the Second Judicial District of New Mexico (the "State Court Action"). *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

For the limited purpose of ruling on Defendants' request to set a supersedeas bond, the Court finds:[2]

On October 7, 2022, the Court entered a final judgment against Defendants as follows:

| Count | Dealerbank Financial Services, Ltd. | William S. Ferguson ("Ferguson") | Armageddon Tool & Die, Ltd. |
|---|---|---|---|
| I | $0 | $0 | $0 |
| II | $630,216 | $91,601 | $3,500 |
| III | $196,050 | $91,601 | $3,500 |
| IV | $630,216 | $91,601 | $3,500 |
| V | $196,050 | $91,601 | $3,500 |
| VI | $575,082 | $0 | $0 |
| VII | | Declaration of personal liability for all estate obligations | |
| VIII | | Claim disallowed until judgment paid in full | Claim disallowed until judgment paid in full |
| Total money judgment (excluding duplicates) | $1,205,298 | $91,601 plus liability for all estate obligations | $3,500 |

Defendants timely filed a motion to reconsider the final judgment, thus preserving their right to appeal the judgment if the motion is not granted. *See* Fed. R. Bankr. P ("Bankruptcy Rule") 8002(b)(1)(A). The motion to reconsider has been fully briefed but not yet ruled upon.

At the same time, Defendants moved the Court to stay enforcement of the judgment pending reconsideration, and to set an appropriate bond.[3] Defendants argue that an appropriate bond would be about $200,000. Plaintiff argues for a much higher bond, i.e., between about $1,000,000 and $1,500,000, depending on which judgment is used.

---

[2] Some of the Court's findings are in the discussion section of the opinion. They are incorporated by this reference.
[3] Plaintiff is stayed from attempting to collect the judgment by orders of the Court entered on November 16 and December 6, 2022.

Defendants justify their relatively low figure in part because "On December 1, 2022, Mr. Ferguson caused $491,547.20 to be wired on his behalf to the Modrall Sperling Trust account to be used to pay the Judgment in favor of Creig Butler against Motiva Performance Engineering, LLC[.]"[4] Per an agreement between Butler and Plaintiff, approved by the Court after notice to Defendants and others in June 2021, the Modrall firm forwarded the funds to Plaintiff, who disbursed $218,765 to the Modrall firm (for its work as Plaintiff's special counsel) and $193,418 to Butler. The estate retained $82,893.

Because of the alter ego judgment, the pre- and postpetition claims against the estate are relevant. Those are summarized and discussed in sections C, D, E, F, H, and I below.

B.     Stay Pending Appeal and the Supersedeas Bond.

Fed. R. Civ. P. ("FRCP") 62, made applicable to this proceeding by Bankruptcy Rule 7062, provides in part:

> (b) Stay by Bond or Other Security. At any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security.

In addition, Bankruptcy Rule 8007 provides in part:

> (a) Initial motion in the Bankruptcy Court
>  (1) In general
> Ordinarily, a party must move first in the bankruptcy court for the following relief:
>     (A) a stay of a judgment, order, or decree of the bankruptcy court pending appeal;
>     (B) the approval of a bond or other security provided to obtain a stay of judgment;
>     (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending; or
>     (D) the suspension or continuation of proceedings in a case or other relief permitted by subdivision (e).
>   (2) Time to file

---

[4] The quoted language is from Defendants' supplemental reply in support of their motion to stay enforcement and set a bond.

The motion may be made either before or after the notice of appeal is filed.

"A judgment creditor's primary concern when a judgment in his favor is stayed pending appeal is that he be "secure ... from loss resulting from the stay of execution...." *Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871, 873 (10th Cir. 1986), quoting *Texaco, Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1154 (2d Cir. 1986), reversed on other grounds, 481 U.S. 1 (1987); *see also Midwest Tr. Co. of Missouri v. Gard*, 2009 WL 2043502, at *1 (D. Kan.) (quoting *Miami Int'l*); *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n,* 636 F.2d 755, 760 (D.C. Cir. 1980) (the purpose of the supersedeas bond is to secure the appellee from loss resulting from the stay of execution; because the stay benefits appellant and deprives appellee of the immediate benefits of his judgment, a full supersedeas bond should normally be required).

> When setting supersedeas bonds courts seek to protect judgment creditors as fully as possible without irreparably injuring judgment debtors . . . .A full supersedeas bond may be required "where there is some reasonable likelihood of the judgment debtor's inability or unwillingness to satisfy the judgment in full upon ultimate disposition of the case and where posting adequate security is practicable."

*Miami Int'l*, 807 F.2d at 873 (quoting *Pennzoil*); *Bird*, 2015 WL 10945571, at *2 (quoting *Miami Int'l*).

Trial courts have discretion in setting supersedeas bonds. *Miami Int'l*, 807 F.2d at 873, citing *Pennzoil*, 784 F.2d at 1155; *Wood v. Allstate Ins. Co.*, 2021 WL 1293334, at *1 (D. Colo.) (citing *Miami Int'l*); *Bird v. Regents of New Mexico State Univ.*, 2015 WL 10945571, at *2 (D.N.M.) (same).

Here, Defendants do not argue that the bond should be reduced because of an inability to post it. Rather, the dispute is over how large a bond is needed to protect Plaintiff "as fully as possible" without irreparably injuring Defendants.

C.    Post-Judgment Interest.

> "[T]he amount of the bond usually will be set in an amount that will permit satisfaction of the judgment in full, together with costs, interest, and damages for delay ...." *United States ex rel. Lefan v. Gen. Electric Co.,* 397 F. App'x 144, 151 (6th Cir. 2010) (quoting 11 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, *Federal Practice and Procedure* § 2905 (4th ed. 2008)); *accord O'Callaghan v. SPX Corp.,* No. 2:09–cv–10196, 2010 WL 299497, at *2 (E.D. Mich. Jan. 20, 2010) ("Generally, courts require that the supersedeas bond include the judgment, pre and post judgment interest, anticipated appellate costs, and damages for delay caused by the appeal.") (citation omitted); *Norton v. Canadian Am. Tank Lines,* No. 06–411–C, 2009 WL 3172105, at *1 (W.D. Ky. Sept. 29, 2009) ("Courts generally require that the amount of the [supersedeas] bond include the full amount owed under the award, post-judgment interest, attorney's fees and costs." (quoting *Verhoff v. Time Warner Cable, Inc.,* No. 3:05CV7277, 2007 WL 4303743, at *3 (N.D. Ohio Dec. 10, 2007))).

*Mariner Health Care, Inc. v. Sherrod*, 2011 WL 2418473, at *5 (W.D. Tenn.); *see also North River Ins. Co. v. Greater New York Mut. Ins. Co.*, 895 F. Supp. 83, 84 (E.D. Pa. 1995) ("in the normal course, a stay should be granted if a supersedeas bond includes the amount of the judgment as well as post-judgment interest, and, if recoverable, counsel fees and costs."), citing *U.S. v. Mansion House Center Redev. Co.,* 682 F. Supp. 446 (E.D. Mo. 1988).

Plaintiff's judgment in this adversary proceeding is accruing interest at the federal rate, see 28 U.S.C. § 1961(a), which was 4.15% on the date the final judgment was entered (October 7, 2022).

D.   Costs and Attorney Fees Incurred in the Appeal.

If the appellant is liable for the appellee's attorney fees incurred in affirming the judgment, then the supersedeas bond should include the estimated amount of costs and attorney fees to be incurred in the appeal. *See, e.g., Avrigan v. Hull*, 125 F.R.D. 185, 188 (S.D. Fla. 1989) ("The bond amount should also include attorneys' fees the defendants will incur on appeal."); *Jones v. City of College Park*, 2011 WL 13391757, at *2 (N.D. Ga. 2011); *North River Ins. v. Greater N.Y. Mut. Ins.*, 895 F. Supp. 83, 84-85 (E.D. Penn. 1995) ("in the normal course, a stay should be granted if a supersedeas bond includes the amount of the judgment as well as post-judgment interest, and, if

recoverable, counsel fees and costs."); *see also Mansion House*, 682 F. Supp. at 450 ("because plaintiff does not seek to require defendant to post a bond to cover the anticipated costs of the appeal, no bond amount is required with respect to costs."). Because of the alter ego judgment, Ferguson could be liable for the attorney fees incurred by Plaintiff defending the judgment on appeal.

E.    Postpetition Interest Owed in Solvent Estates under § 726(a)(5).

Because of the alter ego/veil piercing judgment, Ferguson is liable to the estate for all claims against it, thus bringing the estate to solvency. Solvent estates must pay interest "at the legal rate" on all claims and expenses. § 726(a)(5).[5] This Court has held that the "legal rate" is the federal judgment rate. *See In re Augé*, 559 B.R. 223, 227-28 (Bankr. D.N.M. 2016); *see also In re Cardelucci*, 285 F.3d 1231, 1234-36 (9th Cir. 2002); *In re Dow Corning Corp*, 237 B.R. 380, 397 (Bankr. E.D. Mich. 1999); *In re Madison 92nd St. Assoc. LLC,* 472 B.R. 189, 200 (Bankr. S.D.N.Y. 2012); *In re Melenyzer*, 143 B.R. 829, 832-33 (Bankr. W.D. Tex. 1992).

The Court has not addressed whether, under the alter ego judgment, Ferguson would be liable for post-petition interest on the claims against the estate. For the purpose of setting a bond, the prudent course is to include post-petition interest.

F.    Calculation of the Trustee's Commission.

Section 326(a) provides in part:

The court may allow reasonable compensation . . . for the trustee's services . . . not to exceed 25 percent on the first $5,000 for less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000 . . . upon all moneys disbursed . . . in the case by the trustee to parties in interest . . . .

Section 330(a)(7) provides:

---

[5] Unless otherwise indicated, all statutory references are to 11 U.S.C.

-6-
Case 21-01026-t    Doc 136    Filed 12/23/22    Entered 12/23/22 10:17:29 Page 6 of 11

> In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326.

Although there is no binding Tenth Circuit precedent on the issue, other circuits have held that the percentages in § 326(a) generally are reasonable compensation. *See Caillouet v. JFK Capital Holdings, L.L.C. (In re JFK Capital Holdings, L.L.C.)*, 880 F.3d 747, 753 (5th Cir. 2018) (the percentage amounts listed in § 326(a) "are presumptively reasonable for Chapter 7 trustee awards."); *Gold v. Robbins (In re Rowe)*, 750 F.3d 392, 396-97 (4th Cir. 2014) ("absent extraordinary circumstances, a Chapter 7 trustee's fee award must be calculated on a commission basis, as those percentages are set out in § 326(a)"); *Mohns, Inc. v. Lanser*, 522 B.R. 594, 601 (E.D. Wis. 2015), aff'd, 796 F.3d 818 (7th Cir. 2015) ("Congress viewed a commission calculated under the formula in § 326 as the right amount of compensation in nearly every case"); *see also In re Blair Oil Investments, LLC*, 588 B.R. 579, 599 (Bankr. D. Colo. 2018) (citing and following *JFK Capital, Rowe, and Mohns*).

One question courts have wrestled with is whether disbursements to lawyers and other professionals retained by the estate should be included in the "fee base" upon which the trustee's compensation is calculated. Some courts have said no. *See, e.g., In re Testaverde*, 317 B.R. 51, 54-56 (E.D.N.Y. 2004); *In re All Island Truck Leasing Corp.*, 546 B.R. 522, 534 (Bankr. E.D.N.Y. 2016); and *In re McBrearty*, 335 B.R. 513, 518 (Bankr. E.D.N.Y.). Most courts, though, have concluded that professional persons are "parties in interest" in a chapter 7 case and therefore should be included in the fee base used to calculate the trustee's commission. *See, e.g., In re Vona*, 333 B.R. 191, 196-99 (Bankr. E.D.N.Y. 2005); *In re Kohl*, 421 B.R. 115, 130-31 (S.D.N.Y. 2009) (discussing *Vona* at some length); *In re Lally*, 612 B.R. 246, 252-53 (Bankr. D.N.H. 2020); *In re City-Toledo Partners II*, 254 B.R. 155, 163 (Bankr. N.D. Ohio 2000); *In re Mohsen*, 506 B.R. 96, 103-06 (N.D. Cal. 2013); *In re Nardelli*, 327 B.R. 488, 490 (Bankr. M. D. Fla. 2005). This view

is the correct one, in the Court's opinion. In general, administrative expense claimants are considered "parties in interest." *See, e.g., In re Runnels Broadcasting Systems, LLC*, 2009 WL 4611447 (Bankr. D.N.M.) (holder of an allowed chapter 11 administrative expense claim had standing as a "party in interest" under § 1109(b)); *In re Market Resources Devel. Corp.*, 320 B.R. 841, 847 (Bankr. E.D. Va. 2004) ("A party in interest is a party that holds either a claim against the debtor or is entitled to an administrative expense[.]"); *In re North American Oil & Gas, Inc.*, 130 B.R. 473, 478 (Bankr. W.D. Tex. 1990) (disbursements in payment of administrative expenses are "moneys disbursed to turned over to parties in interest"); *In re Orient River Investments, Ltd.*, 133 B.R. 729, 732-33 (Bankr. E.D. Pa. 1991) (trustee can include administrative expenses among disbursements in computing the trustee's maximum compensation under § 326(a); *see also Citi-Toledo Partners*, 254 B.R. at 163 (the term "party in interest" should be given a broad interpretation).

It does not make sense to treat professional persons, whose allowed postpetition fees are administrative expense claims, § 503(b)(2), differently than other administrative expense claims. To be sure, "professional persons" must be "disinterested" when they are retained, *see* § 327(a). After they have started work, however, and are owed money (sometimes a lot of money) by the estate, it is unrealistic to deny that professional persons have a pecuniary interest in the estate, and therefore are as much "parties in interest" as other administrative expense claimants.

G.  Which Portion(s) of the Judgment Should the Bond be Based On?

Plaintiff has money judgments against Defendants that total $1,300,399 and an alter ego/veil-piercing judgment against Ferguson for all of Motiva's debts. A bond based on the money judgments would be $1,500,000 or more. It would be fairer to base the bond amount on the alter ego judgment because any amounts Plaintiff collects in excess of what is needed to pay all claims

against the estate would be returned to Defendants. Debtor's insider creditors and equity security holders have effectively waived any right to payment from the estate, so Plaintiff need not recover more that he could get from enforcing his alter ego judgment.

H.   Allocation of the $491,547 Payment From Ferguson.

There is a disagreement about the proper allocation of the $491,547 Ferguson caused to be paid to the Modrall firm on December 1, 2022. Defendants argue that the money paid Butler's judgment against Motiva, so Butler's claim in this bankruptcy case is now $0. Defendants further argue that what Butler and/or Plaintiff did with the money after Ferguson paid it was their business, but does not change the fact that Butler's claim has been paid. In particular, if Butler elected to give the money to Plaintiff and Plaintiff elected to pay the Modrall firm $218,765, pay Butler $193,418, and keep $82,893 for the estate, that was his business. If Defendants are right, then the bond amount would be significantly lower.[6]

Plaintiff disputes that Ferguson can decide how the $491,547 payment is allocated or to whom it was paid. In Plaintiff's view, Defendants are entitled to credit for the payment but cannot dictate how the money is to be applied.

There are good arguments on both sides of this allocation issue, and it has yet to be fully briefed or argued. It would be improper for the Court to rule on the dispute in the context of setting a supersedeas bond. Until the matter can be properly litigated, the Court will err on the side of caution and assume, without deciding, that Plaintiff is able to decide how the $491,547 should be allocated.

---

[6] This is true in part because Plaintiff used a portion of the funds to pay down the Modrall firm's fee claim. Under Defendants' argument, Ferguson's payment of $491,547 to Butler's counsel resulted in a net reduction in claims against the estate of $710,312.

-9-
Case 21-01026-t    Doc 136    Filed 12/23/22    Entered 12/23/22 10:17:29 Page 9 of 11

I. Calculation of a Reasonable Bond Amount Under the Alter Ego Judgment.

The Court calculates a reasonable bond amount to include the following potential estate liabilities that may have to be paid by Ferguson under the alter ego/veil piercing judgment:

| Claims or expense | Plaintiff's Proposal | Defendants' proposal | Court Ruling |
|---|---|---|---|
| *Claims* | | | |
| Butler | $409,983 | $0 | $216,564[7] |
| IRS | $30,119 | $30,119 | $30,119[8] |
| NMTRD | $31,088 | $31,088 | $31,088[9] |
| UST | $977 | $977 | $977 |
| Armageddon | $0 | $0 | $0[10] |
| Avatar | $0 | $0 | $0 |
| Ferguson | $0 | $0 | $0 |
| *Admin. Expenses* | | | |
| General counsel fees | $41,426 | $41,425 | $41,426 |
| Special counsel fees | $237,951 | $19,186 | $19,186[11] |
| Financial consultant | $33,263 | $33,263 | $33,263 |
| Walker & Associates | $43,934 | $37,867 | $37,867[12] |
| Insurance | $1,510 | $1,510 | $1,510 |
| Auctioneer fees | $10,800 | $0 | $0[13] |
| State court attorney fees from petition date to 12/1/22 | $142,480 | $0 | $142,480[14] |
| *Other* | | | |

---

[7] The original claim amount ($461,083), less payments of $51,100 (paid on or about July 13, 2021), and $193,418 (paid on or about December 9, 2022).
[8] The IRS claim is primarily for estimated "trust fund" taxes.
[9] New Mexico Taxation and Revenue's proof of claim states, unhelpfully, that it is for "state taxes."
[10] Armageddon, Avatar, and Ferguson have essentially withdrawn their claims against the estate.
[11] The Court's figure reflects a $218,765 payment by the Trustee to the Modrall firm on or about December 9, 2022.
[12] The Court's figure is taken from the order approving Walker & Associates' final fee application.
[13] It appears the auctioneer was paid his fees from the sales proceeds and has no further claims against the estate.
[14] Butler incurred $142,480 in attorney fees in the State Court Action from the petition date through December 1, 2022. Butler has a claim for the attorney fees under the New Mexico Unfair Trade Practices Act, NMSA § 57-12-10(C). If the state court awards the additional fees, they may be an administrative expense of Motiva. The Court therefore will include them in the bond calculation.

| Post-judgment interest | $94,246 | $4,500 | $58,797[15] |
|---|---|---|---|
| Attorney fees-appeal | $250,000 | $75,000 | $125,000[16] |
| Appeal costs | $0 | $0 | $5,000 |
| Post-petition interest (§ 726(a)(5)) | $155,951 | $0 | $66,360[17] |
| *Trustee commission* | $55,775 | $0 | $68,186[18] |
| Total | $1,528,703 | $274,985 | $888,059 |
| Less cash on hand | $0 | $-82,893 | $-82,893 |
| *Proposed Bond Amount* | $1,528,703 | $192,092 | **$805,166** |

CONCLUSION

An appropriate bond is $810,000, which is the lowest amount that will fully protect Plaintiff if he prevails in the appeal. The bond will not cause irreparable injury to Defendants. The Court will enter a separate order fixing the supersedeas bond in this amount.

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 23, 2022
Copies to: Counsel of record

---

[15] This figure is based on the assumption that an appeal will take three years, with interest at 4.15% accruing on $459,793 (the sum of all claim and unpaid administrative expenses, including trustee commissions.

[16] The attorney fees and costs for the appeal are estimates.

[17] This amount is two years' interest at 4.15% on the sum of the Butler, IRS, and NMTRD claims ($522,290) and 50% of the estimated administrative expenses ($554,480/2=$277,240). As the expenses were incurred over time, 50% seems a reasonable "ballpark" figure for the purpose of calculating a bond.

[18] This number is the result of applying the trustee commission formula from § 326(a) to a "fee base" comprised of: (i) unpaid claims and administrative expenses other than trustee commissions ($278,748 (claims)+$275,732 (expenses)=$554,480); (ii) claims and expenses already paid by the trustee, i.e., $51,100 paid to Butler in July 2021, $218,765 paid to Modrall in December 2022, $193,418 paid to Butler in December 2022, $10,800 paid to the auctioneer, and $4,782 paid to Walker & Associates, for a total of $478,865; (iii) post-judgment interest and attorney fees incurred in the appeal ($199,032); and (iv) postpetition/prejudgment interest of $66,360. The grand total is $1,298,737. From that base, the Court calculated a 25% fee of $1,250 on $5,000; a $4,500 fee on $45,000; and a $61,609 fee on the remaining $1,248,737.