UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MOTIVA PERFORMANCE  Case No. 19-12539-t7
ENGINEERING, LLC,

    Debtor.

PHILIP MONTOYA, Trustee,

    Plaintiff,

v.  Adv. Pro. No. 21-1026-t

WILLIAM S. FERGUSON, DEALERBANK
FINANCIAL SERVICES, LTD,
ARMAGEDDON HIGH PERFORMANCE
SOLUTIONS, LLC, ARMAGEDDON TOOL
& DIE, LTD, AVATAR RECOVERIES, LLC,
and DAVID ROCHAU,

    Defendants.

## OPINION

The Court tried the merits of this adversary proceeding in August 2022 and entered judgment against Defendants in October 2022. Defendants filed a motion to reconsider, which has now been fully briefed. For the most part, the motion reargues issues that were argued at trial, without asserting any new law or evidence. The Court will deny the motion, although it will clarify that the judgment neither entitles Creig Butler to a double recovery nor requires any Defendant to pay more than needed to provide a full recovery to all estate claimants.

A.    Facts.

For the purpose of ruling on the motion to reconsider, the Court incorporates its findings of fact in the opinion entered on October 7, 2022, doc. 105 (the "October 2022 Opinion").

Capitalized terms not otherwise defined in this opinion have the meanings ascribed to them in the October 2022 Opinion. In addition, the Court finds:[1]

On October 7, 2022, the Court entered a final judgment against Defendants as follows:

| Count | Dealerbank Financial Services, Ltd. | William S. Ferguson ("Ferguson") | Armageddon Tool & Die, Ltd. |
|---|---|---|---|
| I | $0 | $0 | $0 |
| II | $630,216 | $91,601 | $3,500 |
| III | $196,050 | $91,601 | $3,500 |
| IV | $630,216 | $91,601 | $3,500 |
| V | $196,050 | $91,601 | $3,500 |
| VI | $0 | $575,082 | $0 |
| VII | $0 | Declaration of personal liability for all estate obligations | $0 |
| VIII | $0 | Claim disallowed until judgment paid in full | Claim disallowed until judgment paid in full |
| Total money judgment (excluding duplicates) | $1,205,298 | $666,683 plus liability for all estate obligations | $3,500 |

Defendants timely filed a motion to reconsider the final judgment, thus preserving their right to appeal the judgment if the motion is not granted. *See* Fed. R. Bankr. P ("Bankruptcy Rule") 8002(b)(1)(A). At the same time, Defendants moved the Court to stay enforcement of the judgment pending reconsideration, and to set an appropriate bond.[2] On December 23, 2022, the Court set a bond of $810,000. Defendants posted the bond amount in cash, which has been deposited into the Court registry, pending further order of the Court.

B.  <u>Motions to Reconsider</u>.

Neither the Federal Rules of Civil Procedure ("Rules") nor the Bankruptcy Rules recognize motions for "reconsideration." *Hatfield v. Board of Cnty. Comm'rs for Converse Cnty.*, 52 F.3d

---

[1] Some findings of fact are in the discussion section.
[2] Plaintiff is stayed from attempting to collect the judgment by orders of the Court entered on November 16 and December 6, 2022.

858, 861 (10th Cir. 1995) ("The Federal Rules of Civil Procedure recognize no 'motion for reconsideration.'"), citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)); *see also In re Sandia Resorts, Inc.*, 2016 WL 3150998, at *4 (Bankr. D.N.M.) (same). Motions denominated as such typically are brought under Rules 52(b), 59(e), or 60(b).

    1.    <u>Motion to Alter or Amend Findings (Rule 52(b))</u>.

> Under Fed.R.Civ.P. 52(b), a court "may amend its findings—or make additional findings—and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59." [Rule 52(b)] "A motion made pursuant to Rule 52(b) will only be granted when the moving party can show either manifest errors of law or fact, or newly discovered evidence; it is not an opportunity for parties to relitigate old issues or to advance new theories." [*Blann v. Rogers,* Case No. 11–2711–CM, 2014 WL 6895592, *1 (D. Kan. Dec. 5, 2014) (citations omitted)].

*Retiree, Inc. v. Anspach*, 95 F. Supp. 3d 1303, 1307 (D. Kan. 2015) (footnotes inserted into the text), aff'd in part, rev'd in part, 660 F. App'x 582 (10th Cir. 2016). "The standard[s] for a District Court to review a Rule 52(b) motion and a Rule 59(e) motion are essentially the same." *Handley v. United States*, 2021 WL 5195814, at *1 (N.D. Ala.), quoting *Access 4 All, Inc. v. Atl. Hotel Condo. Ass'n, Inc.*, 2006 WL 8431635, at *1 (S.D. Fla.); *see also Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986) (the purpose of Rule 52(b) motions to amend is to correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence).

    2.    <u>Motion to Alter or Amend Judgment (Rule 59(e))</u>.

> Rule 59(e) permits a party to request reconsideration of a final judgment. [Rule 59(e)]. "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." [*Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000).] "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." [*Id.; see also Phelps v. Hamilton,* 122 F.3d 1309, 1324 (10th Cir. 1997). A motion to alter or amend a judgment should be granted only " 'to correct manifest errors of law or to present newly discovered evidence.'" [*Phelps,* 122 F.3d at 1324 (citations and quotations omitted)]. "Neither a Rule 59(a) nor a Rule 59(e)

> motion is the appropriate avenue to revisit issues already considered or to argue matters not raised in prior briefs." [*Blann v. Rogers,* 2014 WL 6895592 at *2 (D. Kan.) (citing *Servants of the Paraclete,* 204 F.3d at 1012; *Waugh v. Williams Cos., Inc. Long Term Disability,* 323 Fed. Appx. 681, 684–85 (10th Cir. 2009)].

*Anspach*, 95 F. Supp. 3d at 1307-08 (footnotes inserted into the text).

> Because reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to [Rules 52 and 59] are to be granted "sparingly," *Maldonado v. Lucca,* 636 F. Supp. 621 (D.N.J. 1986), and only when "dispositive factual matters or controlling decisions of law" were brought to the court's attention, but not considered. *Pelham v. United States,* 661 F. Supp. 1063, 1065 (D.N.J. 1987).

*Gutierrez v. Ashcroft*, 289 F. Supp. 2d 555, 561 (D.N.J. 2003), aff'd on other grounds sub nom, 125 F. App'x 406 (3d Cir. 2005).

In the Tenth Circuit and elsewhere, grounds for relief under Rule 59(e) are: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000), citing *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995).

If a "motion to reconsider" is filed within 14 days after a judgment is entered, most courts treat it as a Rule 59(e) motion. *See, e.g., In re McCaull*, 494 B.R. 81 (10th Cir. BAP 2009) (unpublished) (construing Debtor's motion to reconsider, filed nine days after the order in question was entered, as a Rule 59(e) motion); *Buchanan v. Sherrill*, 51 F.3d 227, 230 n.2 (10th Cir. 1995) ("we construe a post-judgment motion filed within [14] days challenging the correctness of the judgment as a motion under Rule 59(e).").

Defendants filed their motion to reconsider 14 days after entry of the judgment. The Court will treat it as a request to amend findings of fact (Rule 52(b)) and to alter the judgment (Rule 59(e)).[3]

C.  The Judgment Against Dealerbank, Ferguson, and Armageddon on the Fraudulent Transfer Counts (II, III, and IV).

  1.  Motiva's Solvency. The Court found that Motiva was insolvent at all relevant times. Without raising new facts or law, Defendants reargue the solvency issue. The Court believes its insolvency finding was correct.

Defendants urge the Court to "recharacterize" Motiva's debt to Ferguson as equity. This is not a new argument and the Court still declines to recharacterize the debt. Ferguson and Motiva treated Ferguson's investment in Motiva as debt for ten years, including postpetition. They only changed course when Plaintiff brought this proceeding. Ferguson and Motiva should be not be allowed to abandon their unwavering debt characterization the moment it is no longer advantageous to them. In any event, the Court found that Motiva was insolvent at all relevant times even if Ferguson's loans were recharacterized as equity contributions.

Defendants argue that the Court "can correct the error, by applying an insolvency test which accounts for its ability to pay its bills over time," citing *Moody v. Security Pacific Business Credit, Inc.*, 971 F.2d 1056, 1064 (3rd Cir. 1992). This weak argument fails. *Moody* addressed the Pennsylvania Uniform Fraudulent Conveyance Act, not the Bankruptcy Code. *Id.* at 1059. Pennsylvania law has two tests for insolvency: a balance sheet test or, alternatively, the debtor's

---

[3] Because of this, the Court will not discuss Rule 60(b).

inability to pay debts as they mature. *Id.* at 1064. The term "insolvent" as used in § 548(a)(1)(B)(ii)(I) uses only the balance sheet test. *See* § 101(32).[4]

Finally, Defendants argue that "the Court also apparently found and relied upon a legal requirement that all businesses have a 'committed funding source' to pay adverse judgments or they will be found to be insolvent." That is wrong. While the Court noted in its opinion that "Ferguson operated Motiva in such a way that it could never pay a significant unforeseen liability unless Ferguson decided to have Motiva paid [sic] it," that finding was unrelated to the finding of insolvency. The Court found insolvency because Motiva's liabilities exceeded its assets at all relevant times.

2. <u>Motiva's Business Records</u>. Defendants ask the Court to alter its finding that Motiva's business records were "grossly inadequate." Nothing new was raised and the Court declines to do so. Defendants may be correct that "there is no requirement that owners of a small business commit agreements to writing." That does not mean, however, that sophisticated owners can, without risk, operate a business without customary formalities or books and records. Motiva should have had an operating agreement (referred to seven times in Motiva's articles of organization); a ledger of membership interests and transfers; membership certificates; annual income tax returns and K-1s; copies of all leases and contracts with related entities; and a schedule of assets, including all cars purchased with Motiva's license. Motiva's absence of reasonable books and records wasn't "illegal," but it cast doubt on whether Motiva was truly an independent business, rather than Ferguson's alter ego. Ferguson of all people knew or should have known that operating Motiva as he did exposed him to a serious veil-piercing risk.

---

[4] The Court made alternative finding under § 548(a)(1)(B)(ii)(II) and (III).

-6-
Case 21-01026-t    Doc 141    Filed 01/06/23    Entered 01/06/23 14:15:14 Page 6 of 12

3. <u>The Separateness of Turbo from Motiva</u>. Defendants next reargue the issue of Turbo's "separateness" from Motiva. Nothing new is raised, so the Court will not alter its findings. The issue of Turbo's separateness relates mainly to whether it was a breach of duty for Ferguson to turn all of the turbo assets and business over to Turbo without exchange consideration. When Rochau proposed the idea of developing an aftermarket turbo system in 2011, it would have been very easy to organize Turbo as an independent entity; open a bank account; sign a lease; capitalize the new business; file separate state and federal tax returns; and otherwise operate as a stand-alone business. Ferguson chose not to do that. Instead, he and Rochau developed the turbo project wholly within Motiva, with Motiva "expensing" the cost of developing the turbo project. Had Turbo been properly formed and managed as a separate business from its inception, Ferguson's investment could never have been treated as a Motiva expense and there would have been no issue about which business owned the turbo project assets or whether Ferguson breached his duties to Motiva.

4. <u>Ferguson's Use of the Dealer License</u>. Defendants reargue the propriety of Ferguson's use of Motiva's dealer license. The argument raises nothing new. Defendants first argue that Plaintiff "has never produced any evidence that the use of the license harmed Motiva." That is not correct. It clearly harms the holder of a dealer license for a third party (Ferguson) to misuse the license in furtherance of a tax avoidance scheme. *See, e.g.,* NMSA § 66-4-2 (a dealer may not "lease, loan, transfer or sell its license to another person, and no person shall use the license of any other person for any purpose"). Had New Mexico known about Ferguson's misuse of Motiva's dealer license, it would have revoked it years ago.

Defendants assert that "the relationship between Motiva and Ferguson was essentially a casual floor planning arrangement." That is not accurate. Ferguson never loaned any money to Motiva to buy the Subject Cars, nor did Ferguson take a security interest in the cars. Instead,

Ferguson used Motiva's dealer license to evade state excise taxes and buy the Subject Cars for his own account. There is little similarity between what Ferguson did with Motiva's license and a normal automobile "floor plan" loan.

Defendants also argue that Motiva benefited from the consignment sales of cars Ferguson bought with Motiva's license. That is possible, but the argument acknowledges Ferguson's misuse of the license to buy cars on his own account. Had Motiva bought the Subject Cars for resale, as required by New Mexico law, Motiva would have received all attendant profits, not just a consignment fee. The fact that Motiva was chronically insolvent shows that selling Ferguson's cars on consignment was not a significant benefit to Motiva.

5. <u>Ownership of the Vehicles Titled in Motiva's Name</u>. Defendants next reargue, without asserting new facts or law, who owned the Subject Cars. Defendants are cavalier about the obvious problem of Ferguson telling the New Mexico Taxation and Revenue Department that Motiva owns the cars, while telling Motiva's creditors, a state court judge and jury, and the New Mexico Supreme Court that someone else does. As indicated in the Court's ruling, the Court sees Ferguson's change in position as a very serious matter. The law does not allow Ferguson to tell the taxing authorities "A" while telling the rest of the world "not A." The Court's ruling holds Ferguson to his representation that Motiva owned the Subject Cars. The Court believes any other ruling would assist Ferguson in perpetrating a fraud on the Taxation and Revenue Department.

6. <u>Evidence Supporting the Fraudulent Transfer Damages Awards</u>. Defendants argue that Plaintiff failed to introduce evidence of the value of the cars fraudulently transferred, so no money judgment can be entered. That is incorrect. The record contains evidence of how much Ferguson paid for the cars, and also contains Ferguson's testimony that he "always made money buying and selling cars." Based on that evidence, the Court's finding that the cars were worth what

Ferguson paid for them is reasonable. *See, e.g., Blissit v. Westlake Hardware, Inc.*, 410 Fed. Appx. 172, 173 (10th Cir. 2011) (unpublished) (citing *Thunder Basin Coal Co. v. SW Publ. Serv. Co.*, 104 F.3d 1205, 1212 (10th Cir. 1997), the court states that the legal standard is "whether the record—viewed in the light most favorable to the prevailing party—contains substantial evidence to support the jury's decision."). The Court believes that the acquisition cost of the Subject Cars, together with Ferguson's testimony about his track record of making money buying and selling cars, is substantial evidence of value on the date of the challenged transfers. There could have been other evidence, e.g., expert testimony, which may or may not have been better. It was and is the Court's opinion that the evidence it relied upon was sufficiently substantial to support the findings.

Defendants complain in particular that the Court overvalued the 1936 Packard convertible because the $222,000 purchase price was paid in large part by trading in a 2014 Maserati GT and a 1965 Ford Mustang GT 350R. The trade-ins were valued at $137,000. The fact that the consideration for the Packard was a combination of cash ($85,000) and cars does not change the Packard's value, which the parties agreed, in an arms-length transaction, was $222,000.

Defendants also complain about the valuation of the 2012 Ferrari FF. Ferguson paid $200,000 for the Ferrari in December 2014 ($170,000 in cash and $30,000 in trade). Had Ferguson not improperly used the Ferrari as a "daily driver" (which resulted in the accident discussed in the October 2022 Opinion) instead of leaving it in Motiva's inventory for resale, the Ferrari would have been worth its acquisition cost on November 1, 2018.[5]

---

[5] The Court notes an error on page ten of the October 2022 Opinion, where the acquisition cost of the Ferrari FF is listed as $170,000 rather than $200,000. The Court will correct the error. The correction does not affect the amount of the judgment, as the Court used the correct figure ($200,000) when calculating the judgment.

D.  The Judgment against Ferguson for Breach of Duty.

Defendants disagree that Ferguson breached his fiduciary duties to Motiva when he caused Motiva to transfer the turbo business and assets to Turbo for no consideration. They reargue the issue without any new law or evidence. The Court concludes that its findings of fact and conclusions of law on this issue should not be altered. Had Motiva been owned by an unrelated third party when Ferguson finally organized Turbo in March 2017, Motiva's owner would not have agreed to surrender the turbo business and assets to Turbo for nothing, especially in view of the 2016 federal income tax return that averred, under penalty of perjury, that Motiva had invested at least $575,082 in the turbo business.

E.  The Possibility of a Double Recovery.

Defendants are concerned that Butler could receive a "double recovery," allegedly by receiving payment for the same debt from both the Motiva estate and from Defendants directly if their appeal of the state court sanctions judgment is unsuccessful. It is difficult to say if or how this "double recovery" might occur. Because of the State Court Action and this proceeding; the multiple judgments arising from both; the insider debt and equity claims against the Motiva estate; and the uncertainty of the outcome of the pending and/or future appeals; it is not possible to draft a judgment to cover every eventuality. Instead, the Court will add language to an amended final judgment retaining jurisdiction over the adversary proceeding and bankruptcy case to ensure that, after all appeals have been exhausted and all claims finally determined, the Defendants' judgment liability will not be excessive, duplicative, or otherwise unjust in amount.

F.  Piercing the Corporate Veil.

Defendants reargue the veil-piercing issue with no new facts or law. The Court's findings of fact and conclusions of law are set out in its October 2022 Opinion. No changes are warranted.

Defendants focus, as they did at trial, on Motiva's early years, when it appeared to operate as a typical "speed shop." Even then, however, all was not well. Motiva's ownership has always been murky and its organizational documents inadequate. Corporation formalities were not observed. Motiva should have filed state and federal income tax returns, but did not. Ferguson misused Motiva's dealership license from the beginning. Fairly early in its history Motiva launched the turbo business, which was not handled in a normal, businesslike way. Motiva's dealings with its landlord, also controlled by Ferguson, were not arms-length. Motiva was chronically undercapitalized.

Any façade of being a stand-alone business completely fell apart, however, when the Butler verdict was returned. Every step Motiva took after that showed plainly that it was Ferguson's alter ego, maneuvering solely to benefit Ferguson and harm its creditors, with no thought about how a truly independent business would react to a similar situation. Had Motiva filed a chapter 7 case the same day Butler obtained his jury verdict, Butler would have been paid in full from the Subject Cars, with money left over for Ferguson and the other owners. The fact that Ferguson never seriously considered paying Butler with the assets in Motiva's name shows that the veil-piercing judgment was reasonable.

Plaintiff's veil-piercing claim was strengthened by the fact that Ferguson is a prominent attorney. The public and the courts expect members of the bar to hew to high standards of fairness and integrity when dealing with others, and not use their knowledge of the law against those less conversant with it. Most lawyers satisfy this expectation and are deservedly held in high esteem.

In particular, the courts and the public expect lawyers to address legitimate disagreements with non-lawyers by asking "how can I make this right?" rather than by using legal legerdemain to escape just obligations. In 2016 Ferguson had a relatively small but real problem on his hands:

Motiva badly bungled its work on Creig Butler's Hummer H3, and Butler was mad about it. Instead of finding a way to "make it right," Ferguson allowed the problem to snowball, and then tried to use every trick in the (law) book to avoid paying the adverse jury verdict. When Ferguson put Motiva in bankruptcy, the depth and breadth of Ferguson's manipulation of Motiva, Turbo, and his other businesses, came to an unflattering light. Better was expected.

## CONCLUSION

Defendants' motion to reconsider will be denied by a separate order, except that the Court will issue an amended final judgment retaining jurisdiction over collection of the judgment, to ensure that Defendants do not pay more than the amount necessary pay all claims against the estate. The separate order will increase the Ferrari acquisition cost on page 10 of the October 2022 Opinion from $170,000 to $200,000.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: January 6, 2023
Copies to: Counsel of record